111     241
s69ᴺᵂ 490
e131  ²524
j131  ²538
111    241
f147  ²   7

PEOPLE *v.* GILLESPIE.

1. CRIMINAL LAW—ROBBERY—JOINT RESPONDENTS—EVIDENCE—ORDER OF PROOF.

Upon a prosecution for robbery accompanied by an assault, the admission of evidence that one jointly charged with the respondent had blood on his sleeve when arrested, soon after the robbery, is not error, where it is followed by evidence that the parties were seen together shortly before and after the robbery, and the jury are instructed to disregard such evidence unless they are satisfied that both parties were participants in the crime.

2. SAME—UNWILLING WITNESS.

It is not error to permit the prosecuting attorney to put leading questions to one of his own witnesses, or even to call the attention of such witness to an affidavit previously made by her, and which is inconsistent with her evidence on the trial, where it is evident that she is an unwilling witness, and is endeavoring to screen the accused.

3. SAME—EVIDENCE—HEARSAY.

Evidence that, prior to respondent's arrest upon a criminal charge, a third person told the officer who was attempting to find the guilty parties that he knew who they were, and would help arrest them, and that such officer, being then unable to go, sent with such third person another officer, who arrested the accused and another person for the commission of the crime, is hearsay merely, and its admission is reversible error, where the main question at issue is the identity of the respondent with the person committing the offense charged.

Exceptions before judgment from Calhoun; Smith, J. Submitted November 17, 1896. Decided December 18, 1896.

Edward Gillespie was convicted of robbery from the person. Reversed.

*Loud & Loud,* for appellant.

*O. Scott Clark,* Prosecuting Attorney, for the people.

LONG, C. J. Respondent and one William Gannon were jointly informed against for robbery from the person of Homer Campbell. On March 25, 1895, about 8 o'clock in the evening, Campbell was in the basement of his mill in the city of Albion, and was there assaulted by two men, one of whom struck him with some blunt instrument, rendering him partially unconscious, so that he was unable to identify either of the parties who assaulted him, and who took from his person two dollars. Some considerable evidence was given on the trial tending to identify the respondent and Gannon as the parties who committed the assault and robbery, although counsel for respondent claim here that there was not sufficient evidence to go to the jury upon that question. It is unnecessary to recite the testimony, as we are satisfied that the jury were warranted from the circumstances and the testimony in believing that respondent and Gannon were the persons who committed the assault.

Respondent and Gannon were not found together at the time of their arrest, and the prosecution was permitted to show that Gannon, when arrested, had some blood upon his coat sleeve. Counsel contend that the court was in error in permitting this to be shown until some proof was first made connecting the two together in making the assault. There was some evidence of the parties' being together both prior to and after the assault, and the court properly permitted the evidence as to Gannon's appearance after the arrest, especially as the court, in its charge to the jury, instructed them:

"This evidence was proper, but it can cut no figure in the case only so far as Mr. Gillespie is shown to be connected with Gannon in this alleged robbery. In other words, testimony against Gannon, if there is any such testimony, statements he made, if he made any, his

actions or his conduct, and the condition of his clothing, if there is any such evidence, cannot be taken in any way against Gillespie, unless from the testimony in the case you believe he and Gannon were together in this affair, acting in concert, and are the parties who committed this robbery."

One Tessie Mills was called by the people as a witness, and testified that on the evening in question she was in the mill, and saw the assault committed by two men. She was then asked who these men were, and stated she could not tell. The prosecution conducted her examination to considerable length, and it is apparent from her answers that she was reluctant to tell any fact which came to her knowledge that night. It was only by leading questions, which the court permitted, that the witness could be induced to answer. The prosecution claimed to be surprised by her testimony, and asked her if she did not make an affidavit in relation to the matter, in which she stated substantially that the respondent was one of the men who committed the assault, and that she did not know the name of the other, but would know him if she saw him again. She was asked if this statement in the affidavit was read over to her, and denied that anything of this kind was read over to her. It is contended that respondent was prejudiced by this manner of examination of the witness. A reading of the record shows very clearly that the court was not in error in permitting the prosecution, not only to ask leading questions of the witness, but to call her attention to an affidavit that she had theretofore made, as her further testimony shows that she was well acquainted with Gillespie, was with him that night both before and after the assault, and that upon one occasion, at least, a stranger was present, though the witness did not admit that he was Gannon. Her testimony further showed an effort on her part to screen Gillespie. It was not claimed by the prosecution that what she stated in this affidavit was substantive evidence of the facts there recited, but the affida-

vit was used for the purpose of inducing the witness to state what she knew of the facts; and we think the course pursued by the prosecution was fully warranted, under the rule laid down in *People* v. *Case*, 105 Mich. 92.

It is further contended by counsel for respondent that the court erred in admitting testimony of one D. L. Harrison. Among other things, this witness testified:

" About 11 o'clock, I ran onto Walt Courtright. Walt came to me, and told me that he knew where they were, and who they were, and wanted to know what I would give him to help catch them. I told him I would give him $5. He says: ' I'll let you know in a little while.' So I waited around there a spell, and talked with several ones, until he came back, and says: 'I have struck the right parties. You give me your revolver, and I'll go with you, and get them.' I couldn't go, and I sent Mays. After capturing Gillespie, and taking him to the cooler, they got this tramp, named William Gannon."

This testimony was taken under objection of counsel for respondent; and it is contended that it must have had great weight with the jury upon the question of the identity of the parties; that the statement by the witness as to what Courtright said was mere hearsay, and could but be taken by the jury as evidence that Courtright knew the parties who committed the assault, and was able to make the arrest at once. We think counsel's contention is correct, and that it was error which was prejudicial to the respondent. For this reason the conviction must be set aside, and a new trial ordered.

The other Justices concurred.