PEOPLE v. HILL.

1. HOMICIDE—EVIDENCE—SUFFICIENCY.

In a prosecution for murder, evidence, although conflicting, held, sufficient to warrant conviction.[1]

2. WITNESSES — EVIDENCE—CROSS-EXAMINATION PROPER FOR PURPOSES OF IMPEACHMENT.

Where, in a prosecution for murder, it was the duty of the prosecutor to call two witnesses because they were eyewitnesses to the crime and had participated in it, the trial court properly allowed the prosecutor, on their proving to be hostile to the people's case, to cross-examine them as to statements they had previously made to him incriminating the defendant, where it was limited solely to purposes of impeachment.[2]

3. CRIMINAL LAW—APPEAL AND ERROR—TRIAL—INSTRUCTIONS.

In view of the fact that, in three separate portions of the charge, the trial judge instructed the jury that testimony elicited from hostile witnesses on cross-examination could be used by them only for the purpose of impeachment and not as substantive proof, there is no merit in counsel's contention that the jury used it as substantive proof of defendant's guilt.[3]

4. SAME—TRIAL—INSTRUCTIONS.

An instruction, in a prosecution for murder, that the jury were not concerned with the guilt or innocence of another, not on trial, who was also suspected of committing the crime, and that they must not attempt to decide his guilt or innocence, but that they were to decide the guilt or innocence of defendant, held, not prejudicial to defendant.[4]

5. SAME—APPEAL AND ERROR—NEW TRIAL—WEIGHT OF EVIDENCE.

Under the evidence, motion for new trial held, properly denied.[5]

Error to Wayne; Webster (Clyde I.), J.    Submitted

[1]Homicide, 30 C. J. § 557; [2]Witnesses, 40 Cyc. p. 2560; [3]Criminal Law, 17 C. J. § 3571; [4]Id., 16 C. J. § 2347; [5]Id., 16 C. J. § 2707.

October 14, 1926.     (Docket No. 114.)     Decided December 8, 1926.

Harry Hill was convicted of murder in the first degree, and sentenced to imprisonment for life in the State prison at Marquette.     Affirmed.

*William J. Donovan,* for appellant.

*Andrew B. Dougherty,* Attorney General, *Robert M. Toms,* Prosecuting Attorney, and *Van H. Ring,* Assistant Prosecuting Attorney, for the people.

McDONALD, J.     The defendant was convicted under an information charging the murder of one Alex. Dombrowski, in Brownstown township, Wayne county, Michigan, on the 24th day of January, 1922.     Mr. Dombrowski kept a roadhouse on the Dixie highway, a short distance out of the city of Detroit.     It is the theory of the prosecution that the defendant with three companions, Melvin Brown, Homer Noel, and Leo Pakizer, all of whom were at that time engaged in the business appropriately called bootlegging, went to Dombrowski's place for the purpose of hijacking some liquor.     When they arrived they represented that they were Federal officers and announced that they were there to search his place.     Dombrowski resisted and, grabbing a knife from the kitchen table, made a thrust at one of the men, whom the people say was the defendant Hill.     After a brief struggle, Hill drew his revolver and shot Dombrowski.     One of the other men also used his revolver.     Dombrowski received four bullet wounds in the abdomen, as a result of which he died on the following day.     Brown, Noel, and Pakizer were apprehended.     When brought to trial, Brown and Noel entered pleas of guilty of murder in the second degree and were sentenced to prison.     Pakizer stood trial and was acquitted.     Hill

236—Mich.—43.

was not suspected and was not apprehended. He left the State. Suspicion was directed toward one Leo Sauerman as having been the other member of the party. He was arrested and positively identified by Mrs. Dombrowski, her son Leonard, and two others, as the man who engaged in the struggle with Dombrowski, and who fired the first shot at him. He was tried, convicted and sentenced to life imprisonment. Immediately following his conviction and sentence, a Mrs. Francisco, who lived in Detroit, and at whose home Noel and Hill were rooming at the time of the murder, came forward with a story that Sauerman was not guilty, that Hill was the guilty man and that she had refrained from making an earlier disclosure because she feared Hill, who had threatened to kill her if she divulged what she knew about his connection with the murder. At the conclusion of the official investigation, which followed, Sauerman was paroled and an effort made to apprehend Hill. He was finally arrested in Chicago, brought back to Detroit and there tried and convicted of the murder of Alex. Dombrowski. In his defense he emphasized the identification of Sauerman by Mrs. Dombrowski, her son, and two others. He made an absolute denial of any connection with the murder and claimed an *alibi*. To review his conviction he brings error.

It is first urged that the trial court erred in refusing to direct a verdict of not guilty on motion of defendant's counsel, made at the close of the people's case and again when all the testimony had been taken. In discussing this question, counsel for the defendant has given us an extended analysis of the testimony of the various witnesses. We do not deem it necessary to review this testimony. It was conflicting, but there was direct and positive evidence tending to show that the defendant participated in the crime. If true, it

was amply sufficient to warrant a conviction.   The court properly left the question to the jury.

Strenuous objection is made by the defendant to the ruling of the court which permitted the prosecution to cross-examine witnesses Noel and Brown relative to contradictory statements previously made to the prosecuting attorney and to read such statements in evidence.   Brown and Noel were eyewitnesses to the crime and participated in it.   They had confessed their part and were serving the sentence which the court had imposed upon them.   It was the duty of the prosecuting attorney to call them as witnesses. He did so.   It quickly appeared that they were hostile to the people's case and throughout their testimony constantly sought to shield the defendant.   This gave the prosecuting attorney the right to cross-examine them as to statements they had previously made to him in which each had related the material facts of the crime and involved the defendant as a leading participant.   The court permitted this course to be followed, instructing the jury that the testimony was solely for the purpose of impeachment, and could not be considered by them as substantive proof of the defendant's guilt.   The rule adopted by the trial judge has been approved by this court in many cases, some of which are the following:   *People* v. *Case,* 105 Mich. 92; *People* v. *Gillespie,* 111 Mich. 241; *People* v. *Elco,* 131 Mich. 519; *People* v. *Miner,* 138 Mich. 290; *People* v. *Prevost,* 219 Mich. 233; *People* v. *Greeson,* 230 Mich. 124.

When this testimony was admitted the trial court was careful to instruct the jury as to how they should consider it.   He said:

"The jury will understand that all of this proof—all of this testimony is simply for the purpose of impeachment.   It is not proof against this respondent, not substantive proof.   It is introduced and received

by the court for the purpose of impeachment of hostile witnesses."

And in three separate portions of the charge as given he instructed them substantially in the same manner but at greater length. In view of these instructions, there is no merit to counsel's contention that the jury used the testimony as substantive proof of the defendant's guilt. We think that no improper or prejudicial use was made of the contradictory statements of the witnesses Brown and Noel, and that the court did not err in receiving them in evidence.

Other error assigned relates to the court's instructions concerning Leo Sauerman's implication in the case. In his charge to the jury the court said that the main issue was this:

"Was this respondent present at the Dombrowski home on the 24th day of January, 1922, and did he participate with others in the slaying of Alex. Dombrowski?

"The name of Leo Sauerman has been introduced into the case at various points along the way. You are not concerned with the guilt or innocence of Leo Sauerman and you must not in your jury room attempt to decide his guilt or innocence. That is none of your concern. You are to decide solely, as I have stated, the guilt or innocence of this respondent, and you are to decide that question taking into consideration all of the testimony that has been given here from the witness stand."

We see nothing in this instruction prejudicial to the defendant. Leo Sauerman was not on trial and it was proper for the court to so advise the jury.

We have examined all of the assignments of error relative to the admission and rejection of evidence. In our view none of them have any merit and are not of sufficient importance to require discussion.

Complaint is made of the denial of a motion for a new trial, which was based on the claim that the verdict was against the great weight of the evidence.

The most damaging evidence against the defendant was that of Mrs. Francisco. She was thoroughly cross-examined by able counsel. The court and the jury had an opportunity to form a first hand opinion as to the credibility of her testimony. If true, it was sufficient to justify the verdict. But there were other facts and circumstances detailed by other witnesses which we think tended to corroborate material portions of her testimony. We have carefully read the entire record and have considered all of the questions so well presented in the exhaustive brief of defendant's counsel, and are convinced that by the verdict of guilty substantial justice has been done.

The judgment of conviction is affirmed.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.