PEOPLE v. SACCOIA.

1. CRIMINAL LAW—REPORTS—PSYCHOPATHIC CLINIC—SANITY COMMISSION—CONFRONTATION OF WITNESSES.
    Report of psychopathic clinic or sanity commission on matter of defendant's sanity may not be introduced on his trial for murder over his objection that he be confronted with witnesses (Const. 1908, art. 2, § 19, 3 Comp. Laws 1929, § 17129).

2. SAME—ACCESS TO REPORTS OF PUBLIC BODIES.

Psychopathic department of court and sanity commissions are public bodies and accused has right of access to their reports to obtain knowledge of their contents (3 Comp. Laws 1929, §§ 16520, 17241, as amended by Act No. 317, Pub. Acts 1931).

3. WITNESSES—CREDIBILITY—IMPEACHMENT.

Defendant who places witness on stand vouches for his credibility and may not, ordinarily, impeach him.

4. CRIMINAL LAW—REPORTS—CROSS-EXAMINATION.

The people have the right to have entire report of sanity commission placed before the jury on cross-examination of witness placed on stand by defendant and examined by him as to contents.

5. SAME—SPECULATIVE TESTIMONY.

Speculative testimony of member of sanity commission as to his impression of what the mental condition of defendant might have been at a time prior to that in relation to which examination by commission was held and before doctor ever knew him *held,* properly excluded.

6. SAME—REPORTS—PSYCHOPATHIC CLINIC—SANITY COMMISSION.

Reports of psychopathic clinic and sanity commission based upon observation of people making them, are not admissible upon the part of the people without proof of authenticity and truthfulness, requiring witness on stand for examination and subject to cross-examination.

7. SAME—ADVERSE WITNESSES—QUESTION FOR COURT.

Whether or not member of sanity commission is an adverse witness on trial of defendant for murder is primarily a question for court to determine.

8. EVIDENCE—REPORTS—PSYCHOPATHIC CLINIC—SANITY COMMISSION.

Exclusion of reports of psychopathic clinic and sanity commission when sought to be introduced by defendant, charged with murder, for purpose of impeaching member of sanity commission called by defendant *held,* proper, in view of holding by court that witness was not an adverse one.

Appeal from Recorder's Court for City of Detroit; Gordon (Arthur E.), J. Submitted April 12, 1934. (Docket No. 150, Calendar No. 37,163.) Decided July 2, 1934.

Antonio Saccoia was convicted of murder in the first degree. Affirmed.

*Lewis J. Weitzman,* for appellant.

*Patrick H. O'Brien,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, and *Verne C. Amberson* and *Edmund E. Shepherd,* Assistants Prosecuting Attorney, for the people.

POTTER, J. At the July, 1932, term of the recorder's court for the city of Detroit, defendant was informed against, charged with the murder of Ralph DeMarte, June 28, 1932, in the city of Detroit. On arraignment July 22, 1932, defendant pleaded not guilty. October 17th, defendant withdrew his plea of not guilty and pleaded guilty and was remanded to await sentence. The cause was referred to the probation department and defendant to the psychopathic clinic. November 1, 1932, the court appointed Drs. Edward J. Agnelly, Sam J. Eder and I. L. Polozker as a sanity commission to examine into the sanity of defendant. November 9th, the sanity commission reported it found defendant sane. December 9th, defendant's plea of guilty was set aside and vacated and a plea of not guilty entered. January 18, 1933, a jury was impaneled and sworn and the trial proceeded until January 25, 1933, when the jury returned a verdict of guilty of murder in the first degree. Subsequently a motion for a new trial was made and overruled, and defendant sentenced to life imprisonment in the State prison at Jackson. He appeals, claiming the trial court erred in excluding the report of the psychopathic clinic of the recorder's court; in excluding the report of the sanity commission appointed by one of the judges of the recorder's court;

in refusing to permit appellant to cross-examine the witness Dr. I. L. Polozker, as to statements previously made and signed by him, in the reports of the psychopathic clinic and sanity commission, and in refusing to permit appellant to examine the witness Dr. Edward J. Agnelly, as to his findings concerning appellant's mental condition.

(1)  It is contended the rules of evidence in civil cases are the same in criminal cases. One of the long established, firmly fixed and generally recognized exceptions is that stated in article 2, § 19 of the Constitution, which gives to defendant, on trial, the right "to be confronted with the witnesses against him," which constitutional provision is amplified by 3 Comp. Laws 1929, § 17129, which gives to defendant, on trial, the right to meet the witnesses who are produced against him face to face. Had the people sought to introduce, upon defendant's trial, the report of the psychopathic clinic or of the commission on insanity, defendant could have successfully objected to their introduction upon well-settled statutory and constitutional grounds; that he was entitled to be confronted with the witnesses against him and to meet such witnesses face to face. These constitutional and statutory provisions are not accidental. They were incorporated in the jurisprudence of this country by reason of the universal condemnation of the inquisitorial methods of the star chamber which had been in force in England.

(2)  It is suggested the report of an inquisition of sanity was introduced in the trial of Earl Ferrers. 19 Howell's State Trials, 538. Defendant in that case was tried before the house of peers, in Westminster Hall in 1760. The defendant was indicted in the usual way. He pleaded not guilty. As stated by the attorney general, the prisoner had a right under the law of England, by reason of being an

Earl, to the privilege of being tried before the house of peers. Participating in this trial was Attorney General Pratt, afterward Lord Chief Justice Camden and lord chancellor of England, the solicitor general, Lord Mansfield, and Earl Hardwicke. The case did not involve the introduction or consideration of the report of an inquisition into the sanity of the prisoner, but on the contrary, upon the trial of the case witnesses were produced, examined and cross-examined in the presence of the accused in the usual way. Among the witnesses to defendant's insanity were Dr. John Monroe, Thomas Kirkland, surgeon, and Thomas Goostrey. The defense was handled substantially as the defense of insanity is made here, in the absence of psychopathic clinics and commissions on insanity. The particular thing of importance in the case is the insistence of the attorney general that the witnesses, though medical men, detail the specific things which indicated insanity, a position in which he was sustained by Earl Hardwicke. This case in no sense involves the question here.

(3) The psychopathic clinic is authorized by Act No. 369, § 3, Pub. Acts 1913; 3 Comp. Laws 1929, § 16520, which provides:

"The court shall also have power to make provision for a psychopathic department of the court and have medical and psychopathic investigations and examinations and treatment of persons coming before said court."

The psychopathic department of the court is a part of the court. Its reports are public reports, authorized by law and the defendant had a right to have access thereto and to learn their contents.

Sanity commissions are regulated by chapter 7, § 27, of the code of criminal procedure; 3 Comp.

Laws 1929, § 17241, as amended by Act No. 317, Pub. Acts 1931, which provides:

"When a person accused of any felony shall appear to be insane or shall have been acquitted upon trial upon the ground of insanity, the court, being certified by the jury or otherwise of the fact, shall carefully inquire and ascertain the issue of insanity. The court shall fix the time and place for the hearing of said issue, and shall cause notice thereof to be served on the party filing the petition or making the suggestion of insanity for or on behalf of such person or on one or more of the nearest relatives or friends of such person, if known. The court shall call two or more reputable physicians and other credible witnesses to testify at said hearing, and the prosecuting attorney to aid in the examination and if it be deemed necessary to call a jury for that purpose, is fully empowered to compel the attendance of witnesses and jurors. Such alleged insane person may be represented by counsel who may appear and take part in the proceedings, cross-examine the witnesses and produce witnesses and testimony for and on behalf of such person. If it is claimed that such person became insane after the commission of the felony with which he is charged and before or during the trial thereon, the test on the trial of such issue shall be whether such person is capable of understanding the nature and object of the proceedings against him and of comprehending his own condition in reference to such proceedings and of assisting in his defense in a rational or reasonable manner. If such person is found insane, the judge of said court shall order that he be discharged from imprisonment and that he be turned over to the sheriff for safe custody and removal to the Ionia State hospital, to which hospital such person shall be committed to remain until restored to sanity. When such person shall be restored to sanity, and that fact has been determined by the superintendent of said hospital or by any other pro-

ceeding authorized by this section, the said superintendent of said hospital shall forthwith certify that fact in writing to said judge and prosecuting attorney. The judge shall thereupon immediately require the sheriff without delay to bring such person from the said hospital and place him in proper custody until he is remanded to prison, brought to trial or judgment, as the case may be, or is legally discharged. Any person who has been committed to said hospital as herein provided shall be entitled to a writ of *habeas corpus,* upon a proper petition to the circuit court of the county in which said hospital is situated, made by him or some friend in his behalf. Upon the return of such writ, the fact of his sanity shall be inquired into and determined by the court or by a jury if it is deemed necessary by the court to call a jury for that purpose. If any such person be sent to said hospital, the county from which he is sent shall defray all expenses of such person while at the hospital for a period of two years, and the expense of returning home to such county if his discharge is effected during such period. If he shall not be discharged from said hospital until after his transfer to the State shall have been effected in the manner provided by law, the expenses of his return to said county shall be paid by the State of Michigan. The county or State may recover the amount so paid from such person's own estate, if he have any, or from any relative, town, city or county that would have been bound under existing laws to provide for and maintain him elsewhere.''

This too is a body authorized by statute to be created by the court to aid it in the performance of its public functions. It is a public body and its reports are public reports to which defendant was entitled to access in order to obtain knowledge of their contents.

(4) When Dr. Polozker was on the witness stand for defendant, defendant offered in evidence the re-

port of the psychopathic clinic and of the sanity commission. These were objected to by the prosecuting attorney and the jury excused. During a following colloquy between court and counsel, it does not appear defendant's counsel contended these reports were independently relevant, but claimed that if the doctor deviated in his testimony from his statement made in the reports, defendant had a right to cross-examine, and if upon cross-examination Dr. Polozker took a view different from that stated in the reports, he might be cross-examined on the reports for the purpose of impeachment. The court suggested the reports were made after defendant had pleaded guilty and if the reports were introduced in evidence that fact would be before the jury. Counsel for the respective parties conceded they did not want that part of the reports which indicated the sanity commission was appointed after defendant's plea of guilty and its recommendation that he be confined to the penitentiary introduced. This colloquy finally concluded with a suggestion by the court, "Let the doctor tell what he thinks." No ruling was made. The jury was then brought back. The doctor was upon the stand. He was refreshing his recollection by reading to the jury from the report of the sanity commission, when his testimony was objected to and the court again excused the jury. The court said:

"It was agreed these exhibits would not be offered, and all that has been done so far is to read in the record, and to the jury what was written on the piece of paper."

Considerable colloquy followed. It does not appear the jury was again recalled while this witness was upon the stand. The trial court said:

"There isn't any doubt in my mind but that counsel for defendant may offer and examine any

psychiatrist who has examined this defendant, and examine him as to the course of the examination and as to the conclusions. What I object to is the proposition of the use of these reports in such a way they will be brought before the jury. I am not so sure, however, that this Dr. Maloney, if he deviates from that report, he might not be asked if he did not state so and so in the report. I will say I don't like the proposition of bringing in the officers of the court here to defend one of them. It has been agreed by defense counsel these reports are not to be presented to the jury. I suggest that you let the doctor read the report before he takes the stand to familiarize himself, and in that event he, or they will follow pretty closely the statements made in those reports. Until you show me further law, I am not going to permit you to cross-examine as to the reports, and what they said in the reports which are the confidential reports of this court.''

If, as suggested by the trial court, it was agreed between counsel for the respective parties these reports were not to be introduced in evidence, there was no error in excluding them. Whether the court was correct or not it does appear to have been agreed upon by counsel for the respective parties the reports were not to be placed before the jury in their entirety. This agreement was made because the sanity commission's report had been made after a plea of guilty by defendant, and recommended he be imprisoned. Counsel for defendant did not want these facts before the jury. Defendant placed the doctor on the stand. He vouched for his credibility. He could not, ordinarily, impeach his own witness. If the witness was examined at all by defendant in relation to the contents of the report of the sanity commission it is well settled the people had a right on cross-examination to have the entire document placed before the jury. Criminal cases should not

be tried piecemeal. The entire case must be tried and submitted to the jury. The court is interested only in the application of the law to the concrete facts.

(5)   Dr. Edward J. Agnelly was on the stand as a witness for defendant. He did not claim to be an expert on mental diseases. He narrated no facts indicating mental incompetency on the part of defendant. On the contrary, when pressed for an opinion, he states he thought defendant was normal mentally at the time he made the examination. The only question about his testimony is the refusal of the court to permit the witness to testify to impressions the witness might have had as to what the mental condition of defendant might have been at a time prior to that in relation to which he was being examined by the members of the sanity commission and before the doctor ever knew him.

This was merely adding conjecture to conjecture and we find no error in the refusal of the court to permit further speculation along this line.

(6)   These reports were not admissible upon the part of the people. They could not have been offered in evidence by the prosecuting attorney and received against defendant's objection without proof of their authenticity and truthfulness. The facts contained in such reports were facts based upon observation by the persons who made them, capable of being established by oral testimony. Before such records could have been introduced by the people it would have been necessary to prove their authenticity and accuracy by a witness upon the stand for examination and subject to cross-examination. *People* v. *Dow,* 64 Mich. 717 (8 Am. St. Rep. 873).

There is nothing in *Rice* v. *Rice,* 50 Mich. 448; *Chase* v. *Spencer,* 150 Mich. 99, and *Massachusetts Mutual Life Ins. Co.* v. *Trustees of Michigan Asylum*

*for the Insane,* 178 Mich. 193 (51 L. R. A. [N. S.] 22, Ann. Cas. 1915 D, 146), all civil cases, which militates against this holding.

(7)   Dr. Polozker was called by defendant who claims he had a right to introduce the report and cross-examine Dr. Polozker as an adverse witness. Whether the doctor was an adverse witness or not was primarily for the court.   We think it was correct in holding the witness was not an adverse witness, and defendant did not have a right to contradict him by introducing the reports of the psychopathic clinic and of the sanity commission for that purpose.   There is nothing to take the case out of the general rule that one who calls a witness ordinarily vouches for his credibility.   Had these witnesses been called by the people, defendant would have had the right of cross-examination, and the right to introduce in evidence the prior statements signed by the witnesses for the purpose of contradiction.   This was not the case here.   On the contrary it was agreed between counsel for defendant and the prosecuting attorney these reports were not to be introduced in their entirety in evidence, but parts of them were to be kept from the jury.   We find no error.   Conviction affirmed.

NELSON SHARPE, C. J., and NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.