PEOPLE *v.* BABCOCK.

1. CRIMINAL LAW—MISTRIAL—REFERENCE TO OTHER OFFENSES IN OPENING STATEMENT.

   In prosecution for perjury, error, if any, in prosecutor's reference in opening statement to fact that defendant had already pleaded guilty to conservation law violation charge in justice court was cured and not ground for mistrial where prosecutor had consented to have plea of guilty set aside, objection was promptly made, jury instructed to disregard it, and the matter was not pursued further during the trial either by testimony, reference by prosecutor, or request to charge by defendant.

2. SAME—EXPLANATION OF CHANGE OF TESTIMONY—HEARSAY.

   In prosecution for perjury wherein a 17-year-old witness testified on direct examination that certain acts were done which constituted a violation of the conservation law, and on cross-examination it developed that before the examining magistrate the witness had testified three times to the contrary but changed his story when promised he would not be prosecuted for perjury, it was proper to permit witness upon redirect examination to explain that the change was made after his own attorney had advised him to tell the truth without violating rule against admission of hearsay testimony.

3. WITNESSES—EXPLANATION OF DISCREPANCIES.

It is proper to permit a witness to state the reasons for discrepancies which may appear in his statements on the stand especially when a wrong inference or conclusion is likely to be drawn without an explanation.

4. CRIMINAL LAW—IMPEACHMENT OF HOSTILE RES GESTAE WITNESSES.

In prosecution for perjury arising out of a conservation law violation in which defendant and others participated, where other participants who were *res gestae* witnesses and then had perjury charges pending against them gave testimony adverse to the claims and theories of the people on cross-examination by defendant and on redirect examination by the prosecutor, it was proper for prosecutor to present testimony of a witness impeaching a clearly hostile *res gestae* witness that a conversation had taken place not in presence of defendant where there was nothing in the testimony prejudicial to defendant.

5. SAME—CREDIBILITY OF PEOPLE'S WITNESSES—IMPEACHMENT.

In view of the prosecutor's duty to produce before jury all facts tending to prove guilt or innocence, he cannot always vouch for credibility of witnesses he places upon the stand; hence, when such a witness is clearly hostile, it is competent to impeach him by showing contradictory statements, not for purpose of showing substantive facts of guilt, but that the jury may value his testimony at its real worth.

6. PERJURY—EVIDENCE.

In prosecution for perjury, testimony *held*, to establish guilt of defendant beyond a reasonable doubt.

Appeal from Ogemaw; Shaffer (John C.), J. Submitted April 16, 1942. (Docket No. 86, Calendar No. 41,850.) Decided May 18, 1942. Rehearing denied July 1, 1942.

Jack Babcock was convicted of perjury. Affirmed.

*Herbert W. Smith*, for defendant.

*Herbert J. Rushton*, Attorney General, and *Melvin E. Orr*, Prosecuting Attorney, for the people.

CHANDLER, C. J.   The defendant was convicted of the crime of perjury and appeals to this court,

claiming that the trial court erred in refusing to grant his motion for a mistrial for alleged misconduct on the part of the prosecuting attorney in his opening statement to the jury, and also assigning error on the part of the court in overruling his objections to certain testimony offered by the prosecution.

It appears from the record that one Phil Lamoreaux was tried in a justice court in the city of West Branch, Ogemaw county, on July 28, 1941, for the offense of having shot a deer out of season on or about July 17th, and also with having in his possession at the same time illegal venison.

On the occasion of the Lamoreaux trial, defendant here was called as a witness by the people and after administration of the oath authorized by law by the justice of the peace was asked if he had seen Phil Lamoreaux on or about July 17, 1941. He answered that he had not seen him. In answer to further questions by the prosecuting attorney, he said that he was not at the home of Lamoreaux on or about July 17, 1941; that said Lamoreaux had not told him that he had a deer; that he did not see any dead deer on this occasion; and that he did not see any venison in the possession of the defendant then on trial.

There is no question but that in the foregoing proceedings a lawful oath was administered to defendant by a justice of the peace having jurisdiction of the judicial proceedings in which this testimony was given, and that the matters inquired about of him were material to the issues involved in the case of *People* v. *Lamoreaux*.

No claim is made by respondent that the evidence was not sufficient to justify a verdict of guilty by the jury, thus presenting for our consideration the sole question as to whether prejudicial error was

committed by the trial court or prosecuting attorney in the trial and proceedings which resulted in the conviction of defendant.

Defendant contends that the court erred in refusing to grant his motion for a mistrial based upon the opening statement made by the prosecuting attorney to the jury wherein he stated that defendant had pleaded guilty in justice court to having illegal venison in his possession on July 17, 1941.

The following quotation from the record is clearly explanatory of the proceedings upon which the motion was based and the determination thereof by the trial court. During the prosecutor's opening statement, the following occurred:

"We will further show in this case that Mr. Babcock was arrested and charged with possession of a part of this deer, which he had taken from Phil Lamoreaux' home, and that upon the arrest being made, upon that charge, that he entered a plea to that of guilty.

"Mr. Smith: We object to that, may it please the court and I ask the court to say to the jury that he cannot use that, it is a question whether he pleaded guilty or not and I came in the other day and asked the court to have that set aside and my brother consented. That case is pending, it has been appealed. I do not think my brother has any right to use it.

"The Court: I think that was the understanding, wasn't it?

"Mr. Orr: Certainly I consented very kindly to that, but he did plead in that case and that is evidence in this case.

"Mr. Smith: Now, if the court please, the court can see that it is not, that has nothing to do with the case of perjury and the very fact that there is any dispute between them, that there is another case entirely, the very fact that Babcock said when

he came before the justice that they asked him to plead in this case and Mr. Babcock says he asked the justice what he was to do and the justice says, 'You can plead guilty or not guilty.' Now, if the court please— * * *

"*Mr. Orr:* The idea. I object to that statement.

"*Mr. Smith:* There is a contest. You brought this up here before the jury.

"*The Court:* Yes, now let us settle it. It just strikes me in view of the—there may be some question, I do not know how serious the question is as to whether he understandingly made that plea, and there is an appeal on it and I think perhaps that his plea as he understood it as guilty should not be used in this case. It is not material to the issue of perjury and I so instruct the jury in this case. I am afraid that we would be getting error into the matter. It has not anything to do with the perjury itself.

"*Mr. Orr:* Your honor, it certainly shows knowledge, guilty knowledge, which is very essential to prove perjury.

"*Mr. Smith:* He is not now being tried on that.

"*The Court:* Now— * * *

"*Mr. Smith:* Without any counsel, without anybody saying anything at all— * * *

"*The Court:* It stands at the present time as in the appeal matter in this court and until it is finally determined.

"*Mr. Orr:* Certainly it is admissible, that cannot be denied before this jury. The testimony to that effect and that is evidence that he did, is evidence that he knowingly had evidence of this fact.

"*The Court:* I feel that it might be error under the circumstances and I would rather err on the safe side.

"*Mr. Orr:* We will show also, members of the jury, that Mr. Babcock made these statements in the court falsely, knowing that they were not true; we will show to this court that he made statements

to other parties wherein he described the situation. My reason for that is merely to show to this jury that there was not any element of confusion or mistake. We will show to this jury in this case that Mr. Babcock made statements prior to the trial at which he told about this deer slaying and about this deer possession. Ladies and gentlemen of the jury, it is our contention that by maliciously and falsely making these statements under oath at the justice court trial that Mr. Babcock committed the crime of perjury. I thank you.

"*The Court:* Do you care to make any statement?

"*Mr. Smith:* I would like to make this motion at this time for the purpose of preserving the rights of the defendant, that because the prosecutor made the statement that he did about the case that is now pending in the court here, that caused a mistrial and the court now discharge the jury and continue this case. I will ask that be done.

"*The Court:* No, your motion will be denied. I think it has been explained to the jury, the situation in regard to the purported plea, and that there has been and is at this time no determination of that case that has been referred to in which Mr. Babcock was a defendant and the jury is instructed to disregard any statement as to Mr. Babcock having entered a plea of guilty to that violation of the conservation law, game law, and I think that with that explanation that we will not declare a mistrial, but you will wipe that from your mind, members of the jury, and know that there is the situation as I have explained it to you. You may proceed.

"*Mr. Smith:* I will reserve the right to make my opening at the close of the testimony."

No further reference during the trial was made by the prosecutor to the charge against defendant for possession of illegal venison and no offer of testimony relative thereto was made.

After conclusion of the trial, the record shows the following:

"The prosecutor requests that the following statement be included in the record to avoid the printing of the entire request to charge of the defendant.

"There was nothing contained in the defendant's request to charge indicating that the defendant desired any further instruction from the court relative to the statement of the prosecutor in his opening statement concerning the defendant having plead guilty to the conservation violation charge in justice court, nor any request as to the consideration to be given by the jury to the rebuttal testimony of Jesse Baird as offered by the prosecution and admitted by the court.

"Consented to by the attorney for the defendant."

We conclude that the trial court did not err in denying defendant's motion for a mistrial. If the prosecutor was wrong in making the statements complained of, the error was promptly cured by the court.

The instant case is in no way comparable to that of *People* v. *Allen*, 299 Mich. 242, relied upon by defendant. Here, the conduct of the prosecutor was not contumacious and no effort was made by him to get before the jury any evidence deemed inadmissible by the trial court. The admonition of the court was promptly heeded and no error resulted.

One Robert Horsell, a 17-year-old schoolboy, was called as a witness for the people and testified that on the evening of July 17, 1941, he was riding with defendant and that they met Phil Lamoreaux and that all went to the Lamoreaux home where Lamoreaux told them he had shot a deer; that later one

Ivan Ketcham and one Gerald Jackson came to the house and that they all went out into the woods where they found a dead deer; that the deer was "skinned out" and cut up in the presence of all of them; and that each of those present carried parts of it to the house.

On cross-examination by counsel for respondent, Horsell testified:

"I was the first witness called upon the trial in court before Justice Babcock on the 28th day of July last. Upon that trial I was asked these same questions. I testified on that trial that I was not at Phil Lamoreaux's house. I also testified that I did not see any venison in Phil Lamoreaux's possession. And also testified that I did not see Phil Lamoreaux that evening. After I testified to that I heard the prosecutor accuse me of swearing falsely. He called me to the stand three times and I told the same story each time. I was sworn the first time. After the trial I was taken to the office of the prosecutor, there I was told that I had committed perjury, and was threatened with prosecution.

"*Q.* And if you did not change your story, you would be prosecuted for perjury?

"*A.* Yes.

"*Q.* And you then changed your story?

"*A.* Yes.

"*Q.* And you were promised at that time, if you did you would not be prosecuted for perjury?

"*A.* Yes."

On re-direct examination, he said:

"I signed a statement in the prosecuting attorney's office the next morning, after the trial. I was in the prosecutor's office twice. Once on the afternoon of the trial, and then again the next morning.

"*Q.* Do you recall any conversation in my office about your signing this statement on the afternoon that you were there?

"*Mr. Smith:* We object to that, if the court please, this is conversation that took place in the presence of this witness, not in the presence of Jack Babcock, and any testimony or any statement made by him would not be binding upon Mr. Babcock.

"*Mr. Orr:* We are following up the testimony which has been introduced by defense concerning conversation between this witness and myself in my office, which is objected to and I think once the question is gone into it can be thoroughly gone into, your honor.

"*Mr. Smith:* I think not.

"*Mr. Orr:* You have opened the door.

"*Mr. Smith:* I have not opened any door, if the court please, he is not entitled to go into the conversation or reasons. We had a right to show that he was promised immunity and that he was told that if he changed his story, he would not be prosecuted for it.

"*The Court:* What was the question?

"*Mr. Orr:* I asked him if he signed a statement and he said, Yes.' I asked him when he signed it and he said, 'The next morning,' and I asked him if he had any conversation with me on the afternoon previous concerning the signing of the statement.

"*Mr. Smith:* And we object to it.

"*The Court:* I think you can answer. I do not think you can tell what it was.

"*A.* I did.

"*Mr. Orr:* What was your statement—did you sign it that afternoon?

"*A.* No.

"*Q.* Will you tell the court why it was not signed that afternoon?

"*Mr. Smith:* That we object to as incompetent, irrelevant, and immaterial.

*"The Court:* I think he may explain.

*"A.* Well, I wanted to talk to my father first and I wanted to see Mr. Chapin.

*"Mr. Orr:* Do you recall whether or not it was at your suggestion or my suggestion that you talk it over with your father?

*"A.* Your suggestion.

*"Mr. Smith:* We object to that.

*"The Court:* Well, now I do not see where that would be material, Mr. Orr.

*"Mr. Orr:* It is an important question whether the witness is telling the truth here today or told the truth in Mr. Babcock's court.

*"The Court:* Yes.

*"Mr. Orr:* And I am trying to show the reason for this being considered today rather than what was said in Mr. Babcock's court, and I think that can be very fairly done; the defense has tried to bring out the picture that I threatened him with prosecution, and I want to establish the reasons for his changing his story and telling the truth here today.

*"Mr. Smith:* I object to that.

*"Mr. Orr:* Why did you change your story?

*"Mr. Smith:* We object to that, if the court please, for him giving a reason of his own, his giving a reason why, which would be incompetent in this case.

*"The Court:* I think the witness can answer the question.

*"A.* Will you read the question?

*"The Court:* Why did you change your story?

*"A.* I went to see Mr. Chapin the next morning and he advised me to come back and tell the truth.

*"Mr. Orr:* Is that the only reason, Mr. Horsell?

*"A.* The only reason.

*"Q.* Yes?

*"A.* Yes, I believe so.

*"Q.* Had you had a conversation with your father in the meantime?

"*A.* Yes.

"*Q.* And would you care to tell what he advised you in that way?

"*Mr. Smith:* We object to that.

"*The Court:* Yes, I think that is objectionable.

"*Mr. Orr:* You did consult Mr. Chapin before you signed any statement, is that right?

"*A.* Yes.

"*Q.* And Mr. Chapin is a local attorney, is that right?

"*A.* Yes.

"*Q.* Do I understand you, he advised you to tell the truth?

"*Mr. Smith:* We object to that, what he advised him to do.

"*The Court:* The witness has already testified that he advised him to tell the truth.

"*Mr. Orr:* Was the statement which you then gave to me the truth?

"*Mr. Smith:* That we object to.

"*The Court:* I do not think that the statement that he made is material anyway. It is this testimony that he now gives, whether that is true.

"*Mr. Orr:* Then is the statement that you have given—the testimony you have given here today on this stand, is that true?

"*A.* Yes.

"*Mr. Smith:* We object to his giving his version of it, rather it is or not. He has sworn here it was.

"*The Court:* It is assumed that it is and the answer may stand.

"*Mr. Orr:* I will ask you whether or not the statement made in Justice of the Peace Babcock's court, whether or not that was true.

"*Mr. Smith:* I object to that for the reason that he cannot bind the defendant by his statement whether it was true or not true. He has testified that it was true before.

"*Mr. Orr:* The credibility of this witness is before this jury, your Honor, and I think that it is

established that he told different stories on that day.

"*The Court:* Yes, I think you may answer that. The testimony given before Justice of the Peace Babcock· was that true or not?

"*A.* No, it was not true."

We find nothing in the foregoing violative of the rule against the admission of hearsay testimony.

The rule of law permitting a witness to give testimony explanatory of certain facts in evidence from which a wrong inference is likely to be drawn is aptly expressed in 1 Gillespie, Michigan Criminal Law and Procedure, pp. 387, 388, as follows:

"As a general rule a witness should be permitted to explain facts in evidence from which a wrong inference or conclusion is likely to be drawn without an explanation. Where there are discrepancies in the testimony or statements of a witness, it is proper to permit him to state the reasons therefor. It would be a reproach to our judicial system if a witness should be precluded from explaining discrepancies in his testimony or the reasons therefor. On redirect examination a witness should be permitted to explain an answer made on cross-examination."

The prosecutor called as *res gestae* witnesses for the people, Phil Lamoreaux, Ivan Ketcham and Gerald Jackson, and after they were duly sworn submitted them to defendant's counsel for cross-examination.

It is clearly apparent from the record that all of these were hostile witnesses and all on cross-examination by defendant, and on redirect examination by the prosecutor gave testimony adverse to the claims and theories of the people, and that all were reputedly involved in the conservation law violation

out of which this case arose. It might be well to add that all had perjury charges pending against them by reason of their testimony given on the trial of Lamoreaux for the alleged violation of the conservation law.

One of these witnesses, Ivan Ketcham, who had pleaded guilty to hunting deer on the occasion of the claimed Lamoreaux violation of the law, on cross-examination by defendant's counsel, testified that he had never seen any venison in the possession of defendant; and that he was not at the home of Lamoreaux on or about July 17th, the date of the alleged violation on the part of Lamoreaux. On redirect examination by the prosecutor he was asked if he did not have some conversation with one Jesse W. Baird, a conservation officer. He admitted that he did but denied having told Baird that he had any venison in his possession and denied that he told him he had seen deer on the night of July 17th.

Baird was called as a rebuttal witness by the prosecution and was asked this question:

"*Q.* Did you have any conversation with Ivan Ketcham relative to his seeing any deer on the night of July 17th or thereabouts when he was hunting?
"*A.* I did."

Counsel for defendant then interposed an objection on the ground that such testimony was not rebuttal and on the further ground that it was hearsay and not binding on defendant because such conversation was not in his presence. The prosecuting attorney then made clear to the court in the presence of the jury that the sole purpose of his inquiry of witness Baird was to impeach the testimony of witness Ketcham whose hostility to the prosecution was clearly established. A careful perusal of the testimony of this impeaching witness

discloses nothing prejudicial to defendant, the testimony bearing upon the credibility to be accorded the testimony of witness Ketcham.

We find no merit to the contention of counsel for defendant that the court erred in admitting this impeaching testimony over his objection. In 1 Gillespie, Michigan Criminal Law and Procedure, p. 407, it is stated:

"Where the prosecutor is bound to produce before the jury all the facts which tend to prove not only guilt but also those which tend to prove innocence, and in certain cases to produce all eyewitnesses, he cannot always vouch for the credibility for the witness he places upon the stand, and, when such a witness is clearly hostile, it is competent to impeach him by showing contradictory statements, not for the purpose of establishing the substantive facts of guilt, but that the jury may value his testimony at its real worth."

See, also, *People* v. *Case,* 105 Mich. 92, *People* v. *Keywell,* 256 Mich. 139.

We have not deemed it necessary to go into details concerning testimony tending to establish defendant's guilt of the crime of perjury, except that of the witness Horsell. However, we might add that there was ample testimony from other witnesses corroborative of the testimony of Horsell establishing the guilt of defendant beyond a reasonable doubt.

The conviction is affirmed.

Boyles, North, Starr, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred.