PEOPLE v ELAUIM

OPINION OF THE COURT

1. CRIMINAL LAW—EVIDENCE—WRITING—PRIOR INCONSISTENT STATE-
MENTS—AMBIGUITY—RELEVANCY.

A trial court did not err in excluding a letter written by an
eyewitness and offered by the defendant as a prior inconsistent
statement to impeach the witness where the letter was ambigu-
ous and standing alone posed no contradiction to any of the
witness's testimony, the trial court gave defense counsel fur-
ther opportunity to explain the letter and connect it to the
testimony, and defense counsel refused to take the opportunity
and failed to establish the relevancy of the letter.

DISSENT BY LEVIN, J.

2. CRIMINAL LAW—EVIDENCE—WRITINGS—PRIOR INCONSISTENT STATE-
MENTS—OFFER TO TESTIFY FALSELY—WITNESSES—CREDIBILITY.

*A letter written before the trial by an eyewitness called by the
people in a criminal case for which a proper foundation had
been laid in that the eyewitness had acknowledged the letter
and signature and the critical names mentioned in the letter
were identified and which either contradicted his trial testi-
mony or was an offer to testify falsely was properly admissible
as bearing on the credibility of the witness, and refusing to
admit the letter in evidence was error.*

3. CRIMINAL LAW—EVIDENCE—SEPARATE CRIMES—MODUS OPERANDI—
RES GESTAE.

*The introduction into evidence by the prosecutor on direct exami-
nation of a witness called by the people of testimony regarding
plans by the defendant to commit other crimes not charged was
improper where there was no indication that the prosecutor*

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Witnesses § 771.
[2] 58 Am Jur, Witnesses §§ 771 *et seq.*, 781.
[3] 21 Am Jur 2d, Criminal Law §§ 8, 9, 182 *et seq.*
[4] 53 Am Jur, Trial § 753.

*was attempting to show* modus operandi *and the evidence was not part of the res gestae.*

4. Criminal Law—Instructions to Jury—Reasonable Doubt—Evidence—Sufficiency.

  *A reasonable doubt may arise from the lack, want, or insufficiency of the evidence for the state, and it was error for a trial judge to instruct the jury that a reasonable doubt may not be based on lack of evidence or the unsatisfactory nature of the evidence.*

Appeal from Recorder's Court of Detroit, Elvin L. Davenport, J. Submitted Division 1 October 10, 1972, at Detroit. (Docket No. 13299.) Decided September 25, 1973. Leave to appeal applied for.

James Elauim was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*Norris J. Thomas,* Assistant State Appellate Defender, for defendant.

Before: Levin, P. J., and V. J. Brennan and O'Hara,* JJ.

V. J. Brennan, J. Defendant was convicted after a jury trial of first-degree murder committed in the perpetration of a robbery (MCLA 750.316; MSA 28.548) and sentenced for the mandatory term of life imprisonment. Three eyewitnesses identified him as a participant in a robbery-mur-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

der occurring at the American Auto Parts Store in Detroit, December 9, 1970.

His sole claim on appeal is that the trial court erred in excluding a letter offered by defendant to impeach one of the eyewitnesses. It was offered as a prior inconsistent statement and was identified and acknowledged by the witness. The text of the letter was ambiguous and standing alone posed no contradiction to any of the witness's prior testimony. The trial court gave defense counsel further opportunity to explain the letter and connect it to the testimony. This defense counsel refused to do. Defense counsel failed to establish the relevancy of the letter. On this basis the trial court's ruling to exclude the letter was not error.

Affirmed.

O'HARA, J., concurred.

LEVIN, J. *(dissenting).* Whatever ambiguities there may have been in the letter refused admittance into evidence, this letter, written before the trial by an eyewitness called by the people, either contradicted his trial testimony or was an offer to testify falsely. It was admissible under either interpretation.

James Elauim was convicted by a jury of first-degree murder on evidence that the murder was committed in the perpetration of a robbery. MCLA 750.316; MSA 28.548.

The errors assigned concern the judge's refusal to admit the letter, the introduction by the prosecutor of evidence of another crime, and the propriety of the instruction on reasonable doubt.

# I

At the trial three witnesses identified Elauim as a participant in an armed robbery of a Detroit auto parts store which resulted in the shooting

death of a store clerk. One of the witnesses was a
customer in the store. A second was the proprie-
tor. The third was Tony Hayes, the witness whose
written statement was not allowed to be intro-
duced. At the time of the trial Hayes was serving
a sentence in state prison for armed robbery.

Hayes testified that he was walking past the
auto parts store at the time of the robbery and
observed through the window an acquaintance of
about six years, defendant Elauim, holding a pistol
on other persons. He walked past, and as he was
coming back heard a gunshot from inside the
store.

Elauim did not take the stand. The defense
consisted of an alibi witness's testimony that
Elauim must have been home with him on the
afternoon of the robbery because he and Elauim
were at home every day and every night in Decem-
ber, 1970, and a suggestion by Elauim's lawyer
during the cross-examination of Hayes that it was
Hayes—a convicted armed robber—who had com-
mitted this robbery.

Hayes was then recalled and acknowledged that
he had sent the following letter to the alibi wit-
ness:

"Dear Mike"

"I m printing this letter so my massage will be
competely understood! * * *

"I'd appreciate it if you'd tell 'june' brother Mike &
his lady kin.

"That the only way june will beat this is to do as I've
done. I admit at the moment I look like a snicth!

"But like it anit that way! june will take a jury trail
& then I will tell the jury in open court how the police
is trying to frame him & has offer me this & that if I
help. *I'll tell them that I've told the police I knew
notchingof it & they told me what to say! & promised
me this & that if I do it!*

"& four or five withnesse's for june wouldn't hurt any either! june & I have kicked it around & he agree's. My record speaks for it sefe, all though a lot of people would like it to be true its not! Im no snicth! and above all, I know what I'm doing!

"Mike-june-chicken-Smilely has know me all my life & they know that ain't my bag!

"Send me chickens—& Smily's adress!

"Sincerely yours
"Mike Hayes

"P.S. have him or Mike drop me a line & keep my intention away from Butch!" (Emphasis supplied.)

Elauim's lawyer offered the letter in evidence as a prior statement inconsistent with Hayes' testimony at the trial. The jury was excused. There ensued an extended colloquy between the judge and Elauim's lawyer. The judge expressed concern that the letter was ambiguous, and that if the jury were to ask him to explain it he would not be in a position to "explain it under the law".

Elauim's lawyer then offered the following interpretation:

"June [a nickname for the defendant, Elauim] will take a jury trial and I will tell the jury and [sic] open court how the police is going to frame him and I'm hoping he can get some alibi help. I will tell him that I have told the police I know nothing and they told me what to say."

The judge ruled that unless Elauim's lawyer called upon Hayes to clarify the letter, he would not admit it into evidence. Elauim's lawyer said that he believed the letter was admissible as "a prior and inconsistent statement" and declined to question Hayes concerning the letter. The judge refused to receive the letter in evidence.

While it might have been preferable to ask Hayes about ambiguities in the letter, the thrust

of the letter was clear enough. If the judge had not on his own initiative questioned the admissibility of the letter, an explanation of the ambiguities might have been forthcoming upon a further examination of Hayes which the prosecutor had indicated he wished to undertake but which was effectively prevented when the judge improperly placed on Elauim's lawyer the burden of eliciting from Hayes an explanation of the letter.

A proper foundation was laid; there was no ambiguity concerning the critical names.[1] Hayes acknowledged that he had written the letter and signed it "Mike Hayes", a name he used in correspondence. The letter was addressed to the defendant's alibi witness. Earlier it had been brought out that "June" is Elauim's nickname. The other names are of no importance.

Ordinarily, a statement proffered as an inconsistent statement is an earlier statement of the witness. This letter from Hayes to the alibi witness is a statement of what Hayes would be willing to say at some future time and, thus, does not necessarily record a prior statement. But substantively it is of no importance whether the statement is prior or, as here, an offer to make a statement at some future time. It is the inconsistency, not the timing, of the statement which makes it admissible.

Either Hayes had in fact told the police he knew "nothing of it", or, if that was not true, he was offering to testify falsely at the trial. Either way the letter was admissible.

Professor Wigmore wrote concerning an offer to testify falsely or corruptly:

---

[1] It has been said that the best evidence rule requires that, where the inconsistent statement is in writing, the writing itself be produced. *See* 6 Jones, Commentaries on Evidence (2d ed), § 2408, p 4751; *cf. Maxted v Fowler,* 94 Mich 106; 53 NW 921 (1892). *But see* McCormick, Evidence (2d ed), §§ 28, 37, pp 55, 72.

"§ 957 Willingness to swear falsely. A willingness to swear falsely is, beyond any question, admissible as negativing the presence of that sense of moral duty to speak truly which is at the foundation of the theory of testimonial evidence * * * .

"§ 958 Offer to testify corruptly. An offer to testify corruptly should stand on the same footing; it is only a little less broad in its bearings than the preceding evidence, but it indicates a similar untrustworthiness." 3A Wigmore on Evidence, §§ 957, 958, pp 803–804.[2]

On the other hand, if Hayes had in fact told the police that he knew "nothing of it", as he said he would testify at the trial, then he had made a statement inconsistent with his testimony at the trial.[3]

In *Hamilton v People,* 29 Mich 195, 197–198 (1874), the Michigan Supreme Court held that the defendant Hamilton should have been allowed to introduce into evidence a written statement signed by the chief prosecution witness which contradicted the witness's trial testimony. In the statement the witness explained how he had been led to testify for the prosecution and denied the truth of facts implicating Hamilton in the crime. The Court said:

"We have had no authority produced, and can conceive no reason why this testimony should have been excluded. There is no portion of the document which is irrelevant to the subject of impeachment, and nearly

[2] *Cf. Alford v United States,* 282 US 687, 690; 51 S Ct 218, 219; 75 L Ed 624, 627 (1931).

[3] Admission of the letter in evidence for impeachment purposes would not have run awry of the rule that a party who calls a witness makes him his own witness—"vouches for his credibility". Hayes was not Elauim's witness. He was called as a res gestae witness by the prosecution. Moreover, the "voucher" rule has fallen into disrepute insofar as it prevents impeachment of clearly "adverse" testimony. *See Chambers v Mississippi,* 410 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973).

the whole force of it was destroyed by allowing it to be shorn of its explanations.

"It was one continuous and single narrative, which, if true, or if given, whether true or not, must have entirely destroyed the credit of the witness. His position in the case was one calling for the severest scrutiny, and, while his statements involving other persons would be no evidence against them, it would be a very dangerous thing to hold that a witness swearing a crime upon one man could not be impeached by showing that he had made statements that the crime had been committed by another person not on trial. The only inquiry would be whether there was a contradiction, and that may be shown without reference to its bearings elsewhere.

"The party attempting to attack a witness as false, and to show his falsehood by his self-contradictions, cannot be deprived of a right essential to his own safety, by any considerations of delicacy to others which will stifle the truth. And inasmuch as the impeachment here was by a written statement signed by the witness, the practice would not permit him to be asked whether he made particular statements in it, but when identified, the writing must be put in as a whole, and must speak for itself.—2 Phil Ev, 963-4; *Lightfoot v People,* 16 Mich 507 [1868]. Any explanations which he might be at liberty to make as to its genuineness or correctness would not remove the necessity of submitting the entire document."[4]

---

[4] *See, generally, People v Dellabonda,* 265 Mich 486, 496–500; 251 NW 594, 597–599 (1933).

Michigan cases have upheld the admissibility of prior statements to impeach res gestae witnesses whom the state is required by law to call *(People v Elco,* 131 Mich 519, 523–528; 94 NW 1069, 1073–1074 [1902]; *People v Greeson,* 230 Mich 124; 203 NW 141 [1925]; *People v Babcock,* 301 Mich 518, 531; 3 NW2d 865, 870 [1942]) or where the prosecutor or defense attorney is surprised or deceived by a hostile witness *(People v Gillespie,* 111 Mich 241, 243; 69 NW 490, 491 [1896]; *People v Payne,* 131 Mich 474, 477; 91 NW 739, 740 [1902]; *People v Row,* 135 Mich 505, 508; 98 NW 13, 14 [1904]).

In *People v Saccoia,* 268 Mich 132, 142; 255 NW 738, 741 (1934), while the Court refused to allow the defense lawyer who called a psychiatrist to the stand to impeach him by introducing psychiatric reports signed by him, the Court observed that had the witness been called by the people the defendant would have had the right to cross-

While there was compelling evidence of Elauim's guilt, we could not properly say that the error in refusing to admit the letter in evidence was harmless beyond a reasonable doubt.

While both the customer and the proprietor were clear in their identification testimony, there were some discrepancies in their report of what occurred.

Hayes' identification of Elauim was more compelling than that of the customer and proprietor because he had known Elauim for about six years. Hayes' identification was less likely to be mistaken than the identification of two persons who were not theretofore acquainted with Elauim—a point which the prosecutor emphasized in his closing argument to the jury.

## II

Elauim assigns other errors in the course of the trial.

On direct examination the prosecutor asked Hayes to explain why he had told Elauim, in a conversation after the robbery, that he did not want any police in the neighborhood. Hayes responded that Elauim and "another fellow" were "going to rob [a man who collected guns] and take his guns".

Over the objection of Elauim's lawyer, the judge allowed this line of questioning to continue. Hayes testified that this other robbery was to take place "the same day but it was supposed to take place at night" in the same area as the auto parts store. There was no indication that the prosecutor was

examine him and to introduce the prior statements into evidence for the purpose of contradiction.

attempting to show *modus operandi.* This evidence was not part of the "res gestae" of the auto parts robbery as the judge erroneously ruled. The introduction of this other crime evidence was improper. See *People v Robinson,* 386 Mich 551, 559–564; 194 NW2d 709, 712–714 (1972).

### III

Error is also assigned based on the judge's instruction to the jury on reasonable doubt which narrowed the scope of permissible doubt to positive inferences drawn from the evidence alone. The judge instructed the jury:

"It is a doubt growing out of the evidence; it must grow out of the evidence; *it can't come from outside of the evidence or the lack of evidence, or the unsatisfactory nature of the evidence,* and it is such a doubt that after you have heard all the competent testimony and competent testimony is that which the court says goes in, in the case, you cannot say you have an abiding conviction to a moral certainty of the defendant's guilt, and very few situations in this process can anyone be absolutely certain unless you were there and looked at it yourself, and in such case you would not be fit to serve upon the jury, but would be called as a witness, so the whole process of selecting a jury in a criminal case and instructing them to bring in a fair and impartial verdict means that it has to be a moral certainty and that depends upon witnesses, what weight, what credit to them, what credit do you give to the witnesses and not any particular witnesses but all witnesses. If you have such a doubt it is your duty to acquit the defendant and if you have no such doubt, it is equally your duty to convict him." (Emphasis supplied.)

This case was tried on September 16–20, 1971.

On May 21, 1971, *People v Davies,* 34 Mich App 19, 23, 26–27; 190 NW2d 694, 696, 698 (1971), was decided. In *Davies* the judge charged as follows:

"A reasonable doubt then is not a possible doubt but a fair doubt, a doubt based on reason and common sense. It is a doubt growing out of the evidence. It,— here is the key of it, *it grows out of the evidence, not outside the evidence, or lack of evidence or the unsatisfactory nature of the evidence* and it is such a doubt that after you have heard it all you cannot say that I have an abiding conviction to a moral certainty of the defendant's [guilt]." (Emphasis supplied.)

We declared:

"A reasonable doubt may arise 'from the lack, want or insufficiency of the evidence for the State', and, therefore, it was error to instruct the jury, as the judge did here, that a reasonable doubt may not be based on lack of evidence or the unsatisfactory nature of the evidence."

The judge who sat in this case of Elauim would, in the ordinary course, have received a copy of the *Davies* opinion promptly after its release as he was also the trial judge in the *Davies* case.

I recognize that there was no objection at the trial to the judge's instruction. But the judge has the ultimate responsibility correctly to charge the jury. In the light of the other assigned errors there is no need to consider whether in the absence of objection the giving of this erroneous instruction was reversible error. There is, however, no justification for the continued use of this erroneous instruction unless another panel of our Court or the Michigan Supreme Court takes a different view of the matter.