ARMSTRONG PRICE v. THE STATE.

No. 5719.   Decided March 24, 1920.

**1.—Assault with Intent to Murder—Deadly Weapon.**

Where, upon trial of assault to murder and a conviction of aggravated assault, the court instructed the jury on assault with intent to murder, self-defense, and aggravated assault on the ground that the instrument used was a deadly weapon, and defendant contended that the evidence did not support the verdict of guilty of an assault with a deadly weapon, but the court in his charge in the instant case defined a deadly weapon was one which from the manner used is calculated or is likely to produce death or serious bodily injury, there was no reversible error under the facts in the instant case.

**2.—Same—Assault to Murder—Charge of Court.**

Where, upon trial of assault to murder and a conviction of aggravated assault, the facts showed that defendant threatened to kill the injured party, and the instruments used were such, and the manner in which they were used as were calculated to produce death or serious bodily injury, the court properly submitted his charge on assault with intent to murder.

**3.—Same—Self-defense—Charge of Court.**

Where, upon trial of assault to murder and a conviction of aggravated assault, the court submitted the law of self-defense and properly applied the law to the facts in the case, there was no reversible error.

4.—Same—Right to Arm One's Self—Charge of Court.

Where, upon trial of assault to murder and a conviction of aggravated assault, the issue on the right to arm one's self in anticipation of danger when engaged in a lawful enterprise was not raised by the evidence, there was no error in the court's failure to charge thereon.

5.—Same—Request of Charge—Practice on Appeal.

Where, upon trial of assault to murder and a conviction of aggravated assault the defendant requested a charge on the question of serious bodily injury, etc., which was not applicable to the facts of the case, the same was correctly refused.

6.—Same—Argument of Counsel.

Where, the remarks of State's counsel to the effect that in his judgment no more brutal or dastardly attack had ever been made, etc., was merely a strong statement of his conclusion from the evidence, there was no reversible error, and the evidence being sufficient to sustain a conviction under a proper charge of the court, the verdict will not be disturbed.

Appeal from the District Court of Bowie. Tried below before the Honorable P. A. Turner.

Appeal from the conviction of aggravated assault; penalty, a fine of $375.

The opinion states the case.

*Henry & Barkman* and *S. I. Robison*, for the appellant.—On question of deadly weapon: Parish v. State, 153 S. W. Rep., 327; Little v. State, 135 S. W. Rep., 119; Kinchen v. State, 188 S. W. Rep., 1004.

On question of affray: Piper v. State, 51 S. W. Rep., 1118; Pollock v. State, 22 S. W. Rep., 19.

On question of serious bodily injury: Porter v. State, 132 S. W. Rep., 935.

*Alvin M. Owsley*, Assistant Attorney General for the State.—On question of argument of counsel: Borders v. State, 72 Texas Crim. Rep., 135; Himmelfarb v. State, 174 S. W. Rep., 586.

LATTIMORE, Judge.—Appellant was indicted for assault with intent to murder, in the Criminal District Court of Bowie County, Texas, and upon his trial was convicted of an aggravated assault, his punishment being fixed at eighteen months in the county jail, and a fine of $375.

The statement of facts is very short, and its testimony sharply conflicting. The testimony for the State shows that in an effort to head off some cattle, which were turning down a wrong road, Chapman, the injured party, got over appellant's fence, and crossed a corner of his field; and after turning the cattle, and walking behind them some hundred yards or more, appellant appeared and demanded that Chap-

man come back and fix his fence. Upon Chapman's refusal, appellant said he would make him do it, and started at Chapman, picking up a rock about the size of witness' fist, and a stick about as large as his wrist; and when he reached a point about ten feet from Chapman, appellant threw the rock, striking Chapman on the head and stunning him so that he did not know whether he fell, or just staggered. Appellant followed this with a blow on Chapman's head with the stick, which knocked the latter down, and dazed him; and when he came to his senses, appellant had him by the foot, and was beating him with a stick. Chapman had a gash in his head, caused by the blow from the rock, and a knot on his head, and black and blue places on his body, from the effects of the blows with the stick.

Appellant was a large man, being six feet, two inches in height, and weighing about two hundred pounds. Chapman was a smaller man, weighing about one hundred and fifty pounds.

Just before appellant threw the rock, he said to Chapman, "I will kill you." A negro boy, who was with Chapman, assisting him in driving his cattle, corroborated witness Chapman throughout, and stated also that the latter was knocked down twice—once by the blow from the rock, and again by the blow with the stick.

Appellant and his wife, who are negroes, both stated that when Chapman crossed the fence, he "tore it down;" that when appellant called Chapman, and asked him if he tore down the fence, that the latter said he "did not give a damn," and that when appellant told Chapman he had to fix it up, the latter told appellant to "go to hell," and called him a "black son-of-a-bitch," and told him to come down there, and he would kill him. Appellant undeniably went down to where Chapman was, and as he approached, he claimed that Chapman picked up a stick, and that he then also picked up one; and that as they met, Chapman struck at him, and he then struck Chapman on the head, when the latter fell; and while down, appellant admitted striking him further with the stick. Appellant and his wife both denied that he had any rock.

On redirect examination of Chapman, and the boy who was with him, both denied that Chapman cursed appellant, or called him any names, before appellant picked up a stick.

In his main charge, the trial court instructed the jury on assault with intent to murder, aggravated assault, and also self-defense, and in a special charge, asked by appellant, also charged the law of simple assault. The indictment did not allege the means or instrument used in committing the assault. No ground of aggravation being therein specified, the trial court submitted in his charge, as the means of aggravation, only the one ground of the weapon used being a deadly weapon.

The first ground for reversal here urged by appellant, is that the evidence does not support the verdict of guilty of an assault with a deadly weapon. Many authorities are cited, most of which we have

examined, but, as said by Judge Willson in Pierce v. State, 21 Texas Crim. App., 547, speaking of when a weapon would be deemed deadly "it would be deadly or not, according to its size, or the means of using it, and its character will usually be determined by the jury." The trial court in the instant case charged the jury that a deadly weapon was one which, from the manner used, is calculated, or is likely to produce death or serious bodily injury.

We find also, the following special charge given by the court, at the request of appellant: "Gentlemen of the Jury: Although you may believe that the defendant assaulted L. L. Chapman with a stick and a rock; unless death or serious bodily injury was reasonably calculated to result from the manner of their use, you cannot convict him of any greater offense than a simple assault and battery, and if you have a reasonable doubt as to whether death or serious bodily injury was reasonably calculated to result from the manner of the use of said instruments, you will give the defendant the benefit of such doubt and acquit him of any higher grade of offense than a simple assault and battery.

If you find the defendant guilty of a simple assault and battery you will assess his punishment at a fine in any sum not less than five dollars and not to exceed twenty-five dollars.

Special Charge No. 8, requested by the defendant."

At the request of appellant, the court also gave the following special charge: "Gentlemen of the Jury: Although you may believe from the evidence that the defendant assaulted the witness L. L. Chapman with a deadly weapon or an instrument reasonably calculated to produce death or serious bodily injury from the manner in which it was used and did actually inflict serious bodily injury on the said Chapman yet if at the time of the said assault, if any, the defendant had no specific intention of killing the said Chapman he would not be guilty of an assault to murder and you could not convict him of any higher grade of offense than aggravated assault and battery; and if you have a reasonable doubt as to whether the defendant intended to kill the said Chapman or merely to inflict serious bodily injury on him, if either, you will give him the benefit of such doubt and acquit him of any higher grade of offense than aggravated assault and battery.

If you find the defendant guilty of an aggravated assault and battery you will assess his punishment at a fine in any sum not less than twenty-five dollars and not to exceed one thousand dollars or imprisonment in jail for any term not less than thirty days nor more than two years or by both such fine and imprisonment.

Special Charge No. 10 Requested by the defendant."

It thus appears that the jury had before them every issue possible in this case, to-wit: assault to murder, aggravated assault, simple assault, and self-defense, and inasmuch as it is their province to weigh the evidence and decide the issues of fact under appropriate instruc-

tions, unless the record be devoid of evidence from which they might have fairly reached their conclusion as announced, we should not disturb their verdict.

Taking the State's case as made by its evidence, we have a man, almost a giant, with a flint rock the size of a man's fist, at a distance of ten feet, striking another man on the head therewith, knocking him down and dazing him, and then with a stick as large as a man's wrist, again knocking the man down and stunning him. In determining the manner of the use of a weapon, the jury has the right to consider the relative sizes and strength of the parties, the character of the weapon, the injury it inflicts, and to judge the surrounding circumstances, and if all the issues be submitted, as in this case, we do not feel at liberty to arbitrarily set aside their verdict.

We cannot agree to the contention that there was error in submitting assault to murder. Both Chapman and the witness Ford, testified that just before the assault was actually committed, appellant threatened to kill Chapman. In view of what we have said above, it would be useless for us to further state that we think no error was committed in submitting the issue of aggravated assault, and in refusing to charge on an affray.

The court fully charged on the law of self-defense, based on both real and apparent danger, as viewed from appellant's standpoint at the time, and we think no error was committed in refusing appellant's special charges on said issue.

There appears to us to be no facts calling for a charge on the right to arm oneself in anticipation of danger when engaged in a lawful enterprise. Appellant had only a rock and a stick. He picked both up from the ground just before making the assault. Neither he nor any one else contended that he was seeking an interview with Chapman for a peaceable purpose. Indeed, almost the most urgent insistence of appellant here, is that he was only guilty of an affray. The element of mutuality is one of the distinguishing characteristics of an affray.

Appellant asked a special charge, as follows:

"Gentlemen of the Jury: A serious bodily injury, in law, means an injury which gives rise to apprehension, an injury which is attended with danger to life. Now, if you should believe from the evidence that the defendant did strike the witness Chapman with a stick and a rock and did inflict an injury on him, but have a reasonable doubt as to whether the defendant intended to take the life of Chapman and whether such injury was one attended with danger to the life of the said Chapman, you cannot convict the defendant of assault to murder nor of an aggravated assault and battery, but will acquit him of said offenses."

This charge was refused, and its refusal assigned as error. We do not think this a correct presentation of the law applicable to an assault with a deadly weapon. The conviction was of aggravated as-

sault, the only ground of aggravation submitted being that the instrument or means used was deadly in character. As we have stated above, a weapon may become deadly, when from the manner of its use it is calculated to inflict death or serious bodily injury, but this does not necessarily mean that an injury must be ·inflicted which is likely to produce death, or give rise to apprehension, before the weapon be deadly. For instance, an effort may be made to shoot another with a gun, under circumstances not amounting to an assault to murder, and some injury may be inflicted, as where the injured party receives a slight flesh wound; or, again, an assault may be made with a knife capable of inflicting death, and the deadly blow be diverted, so as to inflict but a slight injury. In either illustration, it would be error to state to the jury that the weapon used would not be deadly, unless the injury be one attended with apprehension, or danger to life. In the authorities cited by appellant in support of his contention that this charge should have been given, the ground of aggravation appears to be that serious bodily injury was inflicted, and in such case a definition of such injury would be proper. Porter v. State, 60. Texas Crim. Rep., 588, 132 S. W. Rep., 935; Grayson v. State, 42 S. W. Rep., 293.

The remarks of the county attorney, to the effect that in his judgment no more brutal or dastardly attack had ever been made, was merely a strong statement of his conclusion from the evidence, but is no such statement of outside facts, or personal abuse, as would justify a reversal for erroneous argument. That the punishment may be more than this Court would have inflicted under such a statement of facts, would never be reason for setting aside a verdict of a jury. No appeal to race passion, or prejudice, appears in the record, nor does such state of facts therein appear as anywise justified the assault made by appellant. If, in hurriedly crossing appellant's fence, where he could reach a point to head off his cattle, a post was broken, or other minor injury inflicted to the fence by the injured party, this would furnish no reason why a man six feet two inches in height, weighing two hundred pounds, should pursue a man weighing one hundred and fifty pounds, and beat him into unconsciousness with a rock and a stick.

The witnesses and the facts were before the· jury. Their verdict was sanctioned by the trial court; and finding no error in the record, the judgment of the trial court is affirmed.

*Affirmed.*