## NEW YORK LIFE INS. CO. v. DOERKSEN.
### No. 735.

Circuit Court of Appeals, Tenth Circuit.

March 28, 1933.

J. S. Simmons, of Hutchinson, Kan. (Alva L. Fenn, Herbert E. Ramsey, and Stuart Simmons, all of Hutchinson, Kan., and Louis H. Cooke, of New York City, on the brief), for appellant.

Roy C. Davis, of Hutchinson, Kan. (A. C. Malloy and Warren H. White, both of Hutchinson, Kan., on the brief), for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

Elizabeth J. Doerksen brought this action against the Insurance Company to recover upon a double indemnity provision of a policy of life insurance issued by it on the life of John A. Doerksen. The material portions of such provision read as follows:

"New York Life Insurance Company agrees to pay to Elizabeth J., wife of the Insured, Beneficiary, * * * double the face of this policy upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause, and that such death occurred within sixty days after sustaining such injury.

"This Double Indemnity Benefit will not apply if the Insured's death resulted * * * from physical or mental infirmity; or directly or indirectly from illness or disease of any kind."

The insured was a traveling salesman. On January 16, 1931, he was driving in a Studebaker eight sedan in an easterly direction in South Dodge, Kansas, at a speed of less than eighteen miles an hour. After weaving from one side of the road to the other several times, the car ran into a ditch, varying in depth from two to three feet, on the south side of the road. After entering the ditch, the car traveled about 35 feet and stopped. The right side of the car struck and splintered a sign post. The front bumper was broken off at the point of attachment on the left side. The left cowl light was broken and there were some dents in the splash board and the left fender.

Certain persons heard the crash, went to the car, and found the insured unconscious, with his head resting against the side of the car. His breathing was slow and labored, and his pulse was almost imperceptible. He was perspiring freely from his forehead. Two doctors were called. Stimulants were given and artificial respiration applied. Insured died about two hours later without having regained consciousness.

There was a mark over the left eye about a quarter of an inch in width and an inch and a quarter in length. There was a mark over the right eye about half an inch wide and

two inches long. The skin was broken at the point of injury over the left eye, but not over the right eye.

An autopsy disclosed arteriosclerosis and enlargement of the heart. The walls of the left coronary artery were hardened and thickened. Medical experts for the Insurance Company testified that the opening in this artery was only from one-fourth to one-fifth of its normal size. An enlarged photograph of a cross-section of the heart and the opening in the left coronary artery clearly supported this testimony. Medical experts for the plaintiff testified that the opening in this artery was approximately one-half of its normal size. The walls of the left ventricle were thickened. The muscle in the apex of the left ventricle had ceased functioning and had been replaced by fibrous tissue. The wounds over the eyes were superficial. There was no injury to the periosteum of the skull underneath them. An examination of the brain failed to disclose any injury to the brain tissue.

Medical experts for the plaintiff, over objection of the Insurance Company, testified that in their opinion the death of the insured had resulted from concussion of the brain caused by the blows on the head. Medical experts for the Insurance Company testified that in their opinion the death of insured had been caused by a heart attack due to the failure of the coronary artery to supply sufficient blood to the left ventricle.

At the close of the evidence the Insurance Company moved for a directed verdict in its favor. This motion was overruled. There was a verdict and judgment for the plaintiff. Thereafter, the court added attorney's fees and costs to the judgment. The Insurance Company has appealed.

■ Where the matter under inquiry is one on which certain persons by reason of training, observation, or experience possess expert knowledge which will be of aid to the jury in reaching a correct solution of the issues and is therefore properly the subject of expert testimony, it is no objection that the opinion elicited from the expert is on an issue or point to be decided by the jury. United States Smelting Co. v. Parry (C. C. A. 8) 166 F. 407; Chicago, R. I. & P. Ry. Co. v. Hale (C. C. A. 8) 176 F. 71; Western Coal & Mining Co. v. Berberich (C. C. A. 8) 94 F. 329; Eastern Transportation Line v. Hope, 95 U. S. 297, 24 L. Ed. 477.

■ A medical expert, after stating the facts, or assuming the facts upon which his opinion is founded in case the question is hypothetical, may give his opinion as to the cause of death. National Life & Accident Co. v. Singleton, 193 Ala. 84, 69 So. 80; Foley v. Pioneer Min. & Mfg. Co., 144 Ala. 178, 40 So. 273; Eggler v. People, 56 N. Y. 642; Hartford Acc. & Ind. Co. v. Industrial Comm., 38 Ariz. 307, 299 P. 1026, 1028. We are of the opinion that the court did not err in admitting the testimony of plaintiff's experts as to the cause of death.

■ In its charge to the jury the court, after instructing as to the terms of the above quoted double indemnity provision and the limitation on the coverage thereunder, charged the jury as follows:

"You are instructed that the term 'disease' or 'bodily infirmity' as used in a policy of insurance such as the one sued on in this case, means some ailment or disorder of an established or settled character or some physical disturbance to which John A. Doerksen was subject. If you find that he experienced an attack at the time of his injury which was *new* or *unusual* with him, arising from some *sudden* or *unexpected* derangement of the system, though it produced unconsciousness, it would not be a disease or bodily infirmity within the meaning of the insurance policy and would not exempt the insurance company from liability in this action, and in that case the plaintiff should recover." (Italics ours.)

It will be noted that the last sentence of the quoted portion of the charge excludes from the term *disease* or *bodily infirmity,* a physical condition that was either sudden or unexpected, and which manifested itself in an attack which was either new or unusual.

Diseases of the heart are frequently insidious. Many persons die from a disease of the heart without being cognizant of such infirmity. In such cases the condition is unknown and unexpected, and the attack is new, yet it is clearly an existing physical infirmity or disease.

The quoted portion of the charge is apparently taken from Manufacturers' Acc. Ind. Co. v. Dorgan (C. C. A. 6) 58 F. 945, 22 L. R. A. 620. However, in the Dorgan Case the court was dealing with a temporary condition or disturbance not falling within the term *disease* or *bodily infirmity,* as those terms are commonly used and accepted.

The instruction here was not limited to a temporary condition. It eliminated conditions which were unknown and unexpected, and the manifestations of which were new. It in effect told the jury that, even though they should find that the insured had suffered

a heart attack at the time of the accident, if he had not theretofore been subject to such attacks and was not aware of the condition of his coronary artery and heart, then such condition would not be a bodily infirmity or disease within the meaning of the policy.

The evidence here showed that the insured had a serious ailment of the coronary artery and heart. Under the facts such ailment may have rendered the insured unconscious and caused him to drive off the road and strike his head on some portion of the automobile. If such were the facts, the heart ailment was a contributing cause to his death, although the primary cause may have been concussion of the brain. Under the facts the blows on the head may have been insufficient to have caused death, and the insured may have died from a heart attack. If such were the facts, the heart ailment was the primary cause of the death.

The testimony showed that the insured had not theretofore suffered a heart attack and was unaware of the condition of his heart and coronary artery. Such being the facts, the instruction excluded those conditions which were clearly diseases or bodily infirmities, both as a contributing cause and as a primary cause of insured's death.

For these reasons we are of the opinion that the instruction was erroneous and prejudicial.

Section 40—256, 1931 Supp., R. S. Kan. 1923, reads as follows:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company or mutual assessment association on any policy of health or accident insurance, if it appear from the evidence that such company or mutual assessment association has refused to pay such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs: Provided, however, That when a tender is made by such insurance company or mutual assessment association before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed."

Section 40—401, supra, in part reads as follows:

"Any ten or more persons, a majority of whom are citizens of this state, may associate in accordance with the provisions of this code and form an incorporated company, upon either the stock or mutual plan, to make insurance upon the lives of persons and every insurance appertaining thereto or connected therewith, and to grant, purchase or dispose of annuities: Provided, That such companies may incorporate in their policies provisions for the waiver of premiums or for the granting of an annuity to the insured, or for special surrender values or other benefits, in the event that the insured shall from any cause become totally and permanently disabled, and any such company may provide for the payment of a larger sum if death is caused by accident than if it results from other causes. Such company may make insurance on the health of individuals, against accidental personal injury, disablement or death, and against loss, liability or expense on account thereof; but such company so transacting such health and accident insurance business, or either kind, shall maintain adequate and separate reserves for such business, shall issue such contracts only in separate policies, shall pay separate admission and renewal fees and taxes, and shall make separate reports to the commissioner of insurance of the premiums received and expenses and losses incurred in connection with such business."

It will be noted that section 40—256, supra, is limited to actions on policies of "health or accident insurance."

It will be further noted that under section 40—401, supra, a domestic life insurance company may provide in a policy of life insurance "for the payment of a larger sum if death is caused by accident than if it results from other causes," and also write insurance on the health and against the accidental death of persons, but that the companies transacting health and accident insurance business shall maintain separate reserves therefor, issue separate policies therefor, pay separate admission and renewal fees and taxes, and make separate reports of the premiums received and expenses and losses incurred in connection with such health and accident business.

Decisions of the Supreme Court of Kansas have recognized a clear distinction between policies of life insurance, and policies of health and accident insurance; and have classified life insurance contracts with double indemnity provisions as life insurance policies, and not as health and accident insurance policies. Balch v. Federal Life Ins. Co., 116 Kan. 560, 227 P. 326; Zeigler v. Kansas Life Ins. Co., 120 Kan. 252, 243 P. 272, 44 L. R. A. 1367.

It seems clear, under the statutes and de-

cisions adverted to, that a policy like the one here involved, if issued by a domestic company, would not be a policy of health or accident insurance, and section 40—256, supra, would not apply thereto.

It is true that the Insurance Company in the instant case is a foreign corporation authorized to transact business in the state of Kansas and that it may, under the provisions of section 40—217, 1931 Supp., R. S. Kan. 1923, with the approval of the Commissioner of Insurance, include any provision in its policies which the laws of the state in which it is organized require it to incorporate therein. But section 40—256, supra, applies to both domestic and foreign companies, and there is nothing in the latter section to indicate an intention to place foreign insurance companies in a less advantageous position than domestic insurance companies.

We conclude therefore that the policy of insurance here sued on was not a policy of health or accident insurance within the meaning of the Kansas statute, and that section 40—256, supra, is inapplicable thereto. It follows that the allowance of attorney's fees was erroneous.

Since the case must be reversed and a new trial granted on other grounds, and additional evidence may be introduced at a subsequent trial, we deem it unnecessary to pass upon the sufficiency of the evidence to support the verdict.

The judgment is reversed with instructions to grant the Insurance Company a new trial.