## JACK FARMER V. STATE.

No. 25,945.  November 5, 1952.
Rehearing Denied February 25, 1953.
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) March 25, 1953.

*Clifford W. Brown, Lawrence Melcher,* Lubbock, and *Kenneth Bain,* Floydada, for appellant.

*Travis D. Shelton,* District Attorney, Lubbock, *John Stapleton,* District Attorney, Floydada, and *George P. Blackburn,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is murder; the punishment, death.

The appellant and the deceased had led a short but turbulent marital life. The deceased left the accused; the appellant bought a pistol, and some few days later went to the cafe where the deceased was working. There, he shot her several times and then turned the pistol on himself.

The only defense offered was that the accused had "blacked out" at the time of the shooting and remembered nothing of what had transpired.

We shall discuss the contentions presented by able counsel in his brief.

Bill of Exception No. 4 reflects that Dr. Hotchkiss, a witness for the state, treated appellant for his self-inflicted wounds some 30 minutes after the homicide. He was permitted to testify, over appellant's objection, that in his opinion, based upon his examination of the accused at that time, together with his observation of the accused for some 8 days following the homicide, at the time of the shooting the appellant knew the difference between right and wrong and understood the nature and consequences of his acts.

Because of the shortness of time that had elapsed between the homicide and the examination by the doctor, we are not

impressed by appellant's complaint that such testimony constituted "prognosis in retrospect."

In Brady v. State, 116 Tex. Cr. R. 427, 34 S.W. 2d 587, we held that a doctor who treated the appellant's wounds "shortly after the homicide" was properly permitted to testify that, in his opinion, the appellant was sane on the night of the homicide, and is controlling herein.

Though not advanced in his brief or argument, we feel that appellant's Bill of Exception No. 3 should be discussed. It complains that the state witness Dr. Kallina, the county health officer, was permitted to testify that he had seen the accused for the first time 7 days subsequent to the homicide and that he was permitted to give his opinion, not in reply to a hypothetical question, that the accused was sane at the time of the homicide and knew the difference between right and wrong and understood the nature and consequence of his acts at such time.

The objection was, among other grounds, that the testimony was not properly the subject of expert testimony because of the length of time which had transpired between the commission of the offense and the examination by the doctor.

The question sought to be raised is not here directly before us for determination, because immediately following the giving of the above testimony the state did propound to the witness a full and accurate hypothetical question, to which the witness answered that in his opinion the accused was sane at the time of the commission of the offense. We feel that the error, if any, was cured by the propounding of the hypothetical question. Such method of interrogating an expert has long been approved.

We have studied the case of People v. Saccoia, 255 N. W. 738, cited by appellant, with care but do not feel that the facts of that case control the case at bar. It is evident from the opinion in that case that the trial court did not feel that the witness was competent to express an opinion on the question of defendant's sanity at a time prior to his examination of him, and the appellate court merely upheld the discretion of the trial court in the matter, without analyzing the question of law before them and without enunciating any rule of law with reference to expert testimony.

We see no merit in appellant's contention that this testimony invaded the province of the jury.

Each doctor observed the appellant and testified from such observation.

Judge Phillips, in N. Y. Life Ins. Co. v. Doerksen, 64 F. 2d 240, said:

"Where the matter under inquiry is one on which certain persons by reason of training, observation, or experience, possess expert knowledge which will be of aid to the jury in reaching a correct solution of the issues and is therefore properly the subject of expert testimony, it is no objection that the opinion elicited from the expert is on an issue or point to be decided by the jury."

Appellant next complains of the admission of evidence as to statements made by the accused following his arrest and while he was being carried in an ambulance to the hospital for treatment. Such damaging statements were evidently admitted upon the thought that they were a part of the res gestae. Though time is not the sole controlling factor in determining whether a statement is res gestae of the offense, we find here that such was made within not less than 10 nor more than 30 minutes after the homicide, depending upon which witness was correct in his estimate as to time. Though also not controlling, we find here that the statements were volunteered and not made in response to an inquiry by the arresting officer.

In the case at bar, a convincing argument favoring the admissibility of the statements is that the appellant had shot himself on the right side between the abdomen and the chest and was shown to have been obviously suffering before and after he made the statement, which would in some measure negative the thought that the statement was premeditated and was persuasive that the same was spontaneously made. Appellant inquired of the officer who had him in custody if his wife was dead and then gave his reasons for hoping that she was.

We find the statement to have been made under such stress and under such conditions as to make it admissible as part of the res gestae. Outlaw v. State, 125 Tex. Cr. R. 636, 69 S.W. 2d 120.

Appellant next complains of a comment of the trial court as

being on the weight of the evidence. We must examine the setting under which the comment was made. The witness Airon had testified for the state, relating a conversation with the appellant prior to the date of the homicide in which appellant had indicated his intention to kill the deceased. When being cross-examined by appellant, the state interposed the objection that counsel's questions were argumentative, which objection the court sustained. The questions related to prior convictions of the witness for vagrancy, drunkenness, and disturbance.

In attempting to justify his course of cross-examination, counsel for appellant made a statement to the court that it was obvious that the witness was hostile and unwilling. At this juncture, the court stated: "Seems to me she has testified very willingly." Appellant objected to such remark of the court as being on the weight of the evidence. Whereupon, the court said, "The court said nothing whatever about credibleness," and instructed counsel to proceed with the examination. Had this statement been made while the witness was testifying for the state, the impropriety of the same would have been obvious. But, coming as it did after the witness had admitted several convictions for the offenses enumerated and was stating to counsel that she did not know whether she had plead guilty to a specific offense because she had employed a lawyer to attend to the matter for her, another situation is presented. As we view the occurrence, it was a statement by the court that the witness was freely admitting her prior misdeeds, which the record supports, and that this was the meaning given it by the jury. We see no injury to the appellant, and hence no reversible error is shown. Crane v. State, 91 Tex. Cr. R. 304, 240 S. W. 920.

Appellant's last complaint relates to the argument of the district attorney in which he told the jury, "Never in my lifetime have I ever seen a more terrible case than this one on its facts."

The bill reflects that the court responded to appellant's objection and instructed the jury not to consider the argument. The bill further recites that the prosecutor who made the statement had also prosecuted the Fred Jones case, which had originated in said county and which had resulted in a death penalty.

Appellant would have us hold that this argument amounted to a statement that the case on trial was more terrible than

the Jones case. This, we are not prepared to do, but we do observe that similar argument has been before this court on several occasions. In Roberts v. State, 48 Tex. Cr. R. 210, 87 S. W. 147, we said:

"We do not believe that the remarks of the county attorney were unauthorized. The mere suggestion that he had tried many cases, but had never tried one where the evidence was as strong as in this, was not of that character as injuriously affected appellant."

And, in Price v. State, 87 Tex. Cr. R. 163, 220 S. W. 89, we find the following:

"The remarks of the county attorney to the effect that in his judgment no more brutal or dastardly attack had ever been made was merely a strong statement of his conclusion from the evidence, but is no such statement of outside facts or personal abuse as would justify a reversal for erroneous argument."

Further, in Brown v. State, 121 Tex. Cr. R. 528, 51 S. W. 2d 616, this court said:

"Moreover, we see nothing improper in advising the jury that the crime committed was, in effect, one of the worst that that section of the state had ever seen. The facts in evidence justified the conclusion that a horrible crime had been committed."

In the case at bar, we feel that the prosecutor was warranted in expressing his opinion of the seriousness of the case from the facts in evidence.

Finding no reversible error, the judgment is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

WOODLEY, Judge.

In the light of appellant's able motion for rehearing we have again examined his bills of exception relating to the testimony of Drs. Hotchkiss and Kallina, wherein they were permitted to express the opinion that appellant at the time of the homicide had sufficient reason to comprehend the nature and quality of his act and that he knew the difference between the right and wrong of the act.

We find no difficulty in determining that the doctors were shown to be qualified as expert witnesses and on the basis of their examination and conversation with appellant were entitled to express their respective opinions on the question of his sanity at the time they saw him.

The admissibility of the testimony as to the sanity or insanity of the appellant at the time of the homicide poses another question.

If, as contended, appellant's defense was confined to his claimed loss of memory or "black-out" at the time of the killing, we would be inclined to agree that the expert testimony on the question of sanity or insanity at the time of the killing based only upon the fact that appellant was normal or sane at a later time would be nothing more than a guess or speculation, on a subject upon which the jury was equally able to form a conclusion.

When the jurors are as well qualified to speak as the witness, the opinion of the witness on the very issue to be determined by the jury is not permitted. See Maroney v. State, 115 Tex. Cr. R. 298, 29 S.W. 2d 772, and cases cited.

Here the defensive theory was not that of a normal person without any history of mental abnormality prior to the act who exhibited no symptom that might be observed by examination thereafter, and who was deprived of consciousness and understanding of his acts at the very moment of the killing due to some overwhelming emotional stress. His testimony, together with that of his expert and non-expert witnesses, portrayed a nervous or mental illness which began some time prior to the homicide and which had grown progressively worse until the time of the killing, at which time, according to these witnesses, appellant did not know right from wrong or the nature and consequences of his act.

Also according to appellant's own testimony, his claimed period of black-out extended for some days after the homicide, and covered the very period of time during which he was treated and examined by at least one of the doctors.

It is further noted that in the absence of the jury it was shown that the conversation between appellant and Dr. Hotch-

kiss included statements indicating that appellant then knew and remembered what had happened.

Under these facts we think that the state was entitled to show that the claimed deterioration which so completely and abruptly came to an end prior to the trial did not in fact exist at the time of the killing. To do so the doctors who examined appellant after the killing and heard him converse about facts of which he testified that he had no memory were permitted as experts to express the opinion that he was sane at the time of the killing.

In Ross v. State, 153 Tex. Cr. R. 312, 220 S.W. 2d 137, we said:

"The rule seems to be well established that a nonexpert witness may delineate his observation of an accused, his attitude, both mental and physical, as compared to his previous attitude, etc., and draw his general conclusion or opinion therefrom, but nowhere have we been able to find any opinion that would allow such nonexpert to say what such opinion would be at a future time such as at the commission of the offense, if such be at a different time from his observation. To allow such an opinion would invade the realm of experts who, from their knowledge, study, and long experience, could therefrom fix a prognosis of such diseased condition of the mind and prophesy its future probable outcome."

We see no reason why the rule stated would not apply to witnesses who examined the accused after the offense as well as to those whose opinion is based upon a prior examination. It seems logical to us that had this progressive deterioration been at work upon appellant's mind for the length of time claimed, some evidence thereof would have been discernible to an expert who examined him shortly after the homicide. It follows, we think, that such an expert is qualified to express his conclusion or opinion that, since he found no evidence of progressive deterioration at the time of his examination, none existed at the time of the homicide a short while prior to the examination. We are careful to limit this holding to the particular type of insanity portrayed in appellant's defense.

We remain convinced that the court did not err in permitting the doctors offered by the state to give their opinion on appellant's sanity at the time of the killing in answer to appellant's expert witness on the same issue.

We observe, also, that it was upon appellant's objection that the details of the conversation between appellant and the doctors were kept from the jury. Also appellant was not prevented from inquiring fully as to the basis of the doctors' opinions. He should not, therefore, be heard to say that the witnesses should have been required to give the details, or that the jury had no criterion by which they could evaluate the opinions.

Appellant cites and relies upon Boles v. State, 108 Tex. Cr. R. 204, 299 S.W. 407, Hill v. State, 134 Tex. Cr. R. 163, 114 S.W. 2d 1180, and Langford v. State, 124 Tex. Cr. R. 423, 63 S. W. 2d 1027. Each of these cases deal with a question upon which the jurors were equally well equipped to draw inferences or form conclusions. The decisions are therefore not deemed applicable. The testimony here was within the realm of expert testimony, as has been pointed out.

Appellant challenges the correctness of the statement in our original opinion that Dr. Kallina, in reply to a hypothetical question, answered that in his opinion the accused was sane at the time of the commission of the offense.

As pointed out by appellant, the statement is not entirely accurate in that the witness answered that it was not probable and he did not believe that appellant could have had a complete lapse of memory and not know what he was doing nor the nature and consequences of his act, and not know whether those acts were right or wrong at the time in question.

We think that the effect of the answer was the same as though he had again testified as to his sanity upon the basis of the hypothetical question. The question was framed to fit the defense testimony that appellant had "blacked out".

If we understand appellant's motion no error is claimed in regard to the testimony of Dr. Kallina other than upon the contention disposed of in connection with the bill relating to the opinion testimony of Dr. Hotchkiss. We find no error in either bill.

We remain convinced that the trial court's remark quoted in our original opinion, which was made while the witness was being called upon to admit convictions and misdeeds of the past, was not such a comment as to indicate to the jury that the trial judge was impressed with her credibility or the truth

of her testimony on direct examination relating to appellant's threat.

We remain convinced that the evidence sustains the conviction for murder with malice. The punishment was for the jury and we have found no reversible error.

Appellant's motion for rehearing is overruled.