Ishmeal CYRUS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 47055, 47056.

Court of Criminal Appeals of Texas.

Oct. 24, 1973.

Kerry P. Fitzgerald, Dallas (Court appointed on appeal only), for appellant.

Henry Wade, Dist. Atty., Robert T. Baskett, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

KEITH, Commissioner.

Two indictments were returned against appellant charging him with the sale of heroin to Fred Young on July 17, 1970, and July 22, 1970. The cases were tried together, the jury returned a verdict of guilt

in each case, and the court assessed the punishment at thirty-five years' confinement in each case. We have a single record of the trial proceedings and only one brief has been filed on behalf of appellant. We will dispose of both cases with this single opinion.

Fred Young, a newly employed probationary police officer of the City of Dallas, was assigned to act as an undercover agent in the southern part of the city. He first made the acquaintance of appellant on July 9 in the company with another individual. On July 17, Young went to appellant's residence, told appellant he "wanted to score"; i. e., in the vernacular of the narcotics underworld, to buy heroin. Appellant went back inside his house, returned with two capsules of heroin, and accepted $14.00 from Young, after assuring him that it was heroin.

The sale and purchase having been made at about nine o'clock in the evening, Young turned the capsules over to Detective Fowler of the Dallas Police Department some two hours later after dating and initialing the container.

The second purchase was made on July 22, 1970, in the middle of the afternoon at a time when appellant was seated in a black and yellow Plymouth automobile which Young had seen earlier at appellant's home. Young eased himself into the back seat of the car, told appellant again that he wanted to "score", and received two capsules from appellant. Again, the price was $14.-00. Young placed these capsules in a small matchbox, initialed the box, placed it in his closet at home, and delivered it to Detective Fowler two days later.

A series of witnesses introduced by the State testified to the chain of custody of the two exhibits and an expert witness testified that the capsules contained heroin. Appellant denied making the sales and claimed that it was a case of mistaken identity. The thrust of his testimony was that Officer Young had mistaken him for his brother, Bobby Cyrus, who was, according to appellant and his family who testified, an unwelcome visitor in appellant's home along about the time in question. Officer Young, although cross-examined vigorously as to his identification, remained unshaken in his testimony that it was appellant who sold him the heroin in each instance.

In his first ground of error, appellant contends that the capsules were improperly admitted in evidence "as the prosecution failed to properly prove up a chain of custody as to each of the items." Obviously the complaint is multifarious; but, overlooking this serious fault, an examination of the record reveals that the factual basis of the complaint is the same as that examined in Reed v. State, 472 S.W.2d 757, 758 (Tex.Cr.App.1971), and found to be without merit. The evidence shows a chain of custody sufficient for its admission in evidence. Kilburn v. State, 490 S.W.2d 551, 553–554 (Tex.Cr.App.1973). Ground one, submitted without authority, is overruled.

Appellant took the stand in his own behalf and denied upon cross-examination that he had ever been convicted of the misdemeanor offense of making a false statement in an application for a driver's license. From the colloquy of counsel in the absence of the jury, it arguably appears in the record that the State was unable to prove that such a conviction was final. One of the prosecutors took the stand in an effort to demonstrate his good faith in asking the question, saying that the records which he had examined showed that defendant had paid a fine for such an offense. He was under the impression that the original docket sheet of the Justice of the Peace would show a final conviction. However, the original records had been destroyed and those substituted therefor reflected no more than the fact that a fine of $26.50 and costs for such an offense had been paid.

Appellant objected to the testimony and moved for a mistral. The trial court ordered the testimony concerning the alleged conviction stricken from the record,

instructed the jury to give it no consideration and overruled appellant's motion for a mistrial.

Appellant chooses the hard road in his argument, saying: "[T]he presence or absence of good faith on the part of the prosecutor is wholly irrelevant, that, in fact, it is the responsibility of the prosecutor to assure himself that he has sufficient proof of such prior offense or offenses before attempting to introduce same." No authorities are cited in support of the contention so advanced and we are not favorably impressed with the position taken.

Appellant made no objection to the questions as originally propounded relating to the prior conviction, possibly in reliance upon the good faith of the prosecutor; but, more importantly, he made no effort to show that the questions were not asked in good faith. Cf. Graham v. State, 486 S.W.2d 92, 97 (Tex.Cr.App.1972).

■■■ Furthermore, the record which was before the trial court showed the payment of a fine and costs and it was appellant's burden to show that the conviction was not final. Reed v. State, 481 S.W.2d 128, 129 (Tex.Cr.App.1972), and cases therein cited. No such attempt was made in this instance.

In Cazares v. State, 488 S.W.2d 110, 112 (Tex.Cr.App.1972), the Court laid down this rule governing the ground now before us:

"It has long been the rule that the asking of improper questions may usually be cured by the withdrawal of the question and the instruction to the jury to disregard the same. Only in extreme cases, where the question is of such damaging or prejudicial nature as to suggest the impossibility of withdrawing the impression produced in the minds of the jury, is reversible error committed. We conclude that the error

herein, if any, was cured by the court's instruction." (citations omitted)

Ground two is overruled.

■■■ Testifying in his own behalf upon direct examination, appellant denied ever having seen Officer Young before the examining trial, denied that Young was ever at his house or that Young had ever been in an automobile with him. His counsel then asked:

"Q Have you ever sold any narcotics to Fred Young?

"A I sold no narcotics to nobody. In fact, I didn't let it lie close to me if I knew it."

In rebuttal, the State proved that Young made another and earlier purchase of heroin from appellant than those charged in the two indictments then being heard. Appellant now complains that this was evidence received in violation of his constitutional rights as showing an extraneous offense. We disagree and overrule ground three. Haggerty v. State, 490 S.W.2d 858, 859 (Tex.Cr.App.1973). "The extraneous offense became admissible in rebuttal to appellant's blanket claim that he had never been" involved in selling narcotics. Hamilton v. State, 480 S.W.2d 685, 687 (Tex. Cr.App.1972).

■■■ Although he made no objections to the court's charge, appellant claims that it was fundamental error for the trial court to omit a limiting instruction as to the extraneous offense discussed above. Understandably, appellant is without authority supporting the contention so advanced. No error is revealed. Martin v. State, 489 S. W.2d 282, 283–284 (Tex.Cr.App.1973), and authorities therein cited.

The judgment of the trial court in each case is affirmed.

Opinion approved by the Court.