**Malone SPAULDING, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 48202.**

Court of Criminal Appeals of Texas.

March 6, 1974.

Donald D. Koons, Dallas, for appellant.

Henry Wade, Dist. Atty., and Robert T. Baskett, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

KEITH, Commissioner.

The jury found appellant guilty of the unlawful sale of a dangerous drug—namely, methylphenidate—and his punishment was fixed by the court at confinement for a period of three years. The sufficiency of the evidence to sustain the conviction is not challenged.

R. J. Harden, an undercover agent of the Texas Department of Public Safety, testified that he purchased two tablets from appellant while in the apartment of one Charley Yates in Dallas on November 27, 1971. The regular chain of custody of the tablets having been established, the State proved that the tablets contained the dangerous drug methylphenidate which had a trade or brand name of "Ritlin". Since Harden was still conducting his undercover activities, the appellant was not arrested at that time. Instead, the case was referred directly to the Grand Jury which returned the indictment on February 21, 1972, but it was not until May of that year that appellant was arrested upon the capias issued thereunder.

Agent Harden, along with the chemist, made out a prima facie case against appellant and he made no mention of any prior or extraneous sales or use of the drug in his original testimony. Appellant testified in his own behalf at the guilt-innocence stage of the proceedings and upon several occasions denied selling any drugs of any kind to Harden. For instance, on cross-examination by State's counsel, he was asked:

"Q. Are you telling this jury that you didn't sell any dangerous drugs to Mr. Hardin on that date?

"A. I haven't sold Mr. Hardin no drugs *or no one else.*

"Q. Never have sold anybody else any drugs, is that what you're saying?

"A. Yes, sir."

We note that the italicized words in the first answer quoted were a voluntary statement injected into the case by the appellant himself and were not in response to the question asked of him.

■ Appellant's first complaint, stated in the form of a question,[1] relates to the introduction "into evidence extraneous offenses and collateral matters."

In several recent cases, we have rejected such contentions. Cyrus v. State, 500 S.W.2d 656, 658 (Tex.Cr.App.1973); Haggerty v. State, 490 S.W.2d 858, 859 (Tex.Cr.App.1973); Hamilton v. State, 480 S.W.2d 685, 687 (Tex.Cr.App.1972). The first complaint is overruled.

■ Next, appellant complains of the court's refusal to grant three items sought in his motion for discovery.[2] It is apparent that this ground of error is multifarious, not in compliance with the statute, and presents nothing for review. Burton v. State, 471 S.W.2d 817, 821 (Tex.Cr.App.1971); Smith v. State, 481 S.W.2d 886, 888 (Tex.Cr.App.1972); Battiste v. State, 485 S.W.2d 781, 782 (Tex.Cr.App. 1972). See also, Black v. State, 503 S.W.2d 554 (Tex.Cr.App.1974).

---

1. Although appellant's brief does not follow the format of the statute, Art. 40.09, § 9, Vernon's Ann.C.C.P., in that no "ground of error" is set out therein, we have overlooked such defect and consider the "questions" so presented as grounds of error called for in the statute. Cf. Kalmbach v. State, 481 S.W.2d 151, 153 (Tex.Cr.App.1972).

2. Appellant sought to discover, according to this complaint: "(a) The names and addresses of any persons involved in the investigation of this case. (b) Originals or copies of any and all investigation reports, worksheets and/or factual memorandums concerning the arrest of this Defendant and/or investigation of this case. [and] (c) Any arrest and/or conviction reports from the Department of Public Safety, Dallas Sheriff's Office, Dallas Police Department, and FBI concerning this Defendant, Malone Spaulding."

■ Moreover, appellant made no effort to prove the existence of the material which he sought nor his right to have it furnished to him by State's counsel. No authorities are cited in support of the contentions now advanced. Indeed, as to item (b) mentioned in the preceding footnote, appellant admits that the decisions of this court are to the contrary but urges us "to reconsider with a view to authorizing full disclosure and discovery."

We decline the invitation extended. No error is shown and the ground of error is overruled. Feehery v. State, 480 S.W.2d 649 (Tex.Cr.App.1972); Elliott v. State, 475 S.W.2d 239 (Tex.Crim.App.1971).

Appellant's third and fifth "questions" complain of the closing argument of the assistant district attorney. Since we are unable to consider the complaints in a vacuum, it is necessary to set out some additional background of the trial. As we have noted earlier, several months elapsed between the date of the commission of the offense and appellant's arrest. Appellant complained vigorously in his trial testimony that this fact alone hampered him in the preparation of his defense. Upon the trial, appellant's counsel asked questions of the undercover agent and the chemist which were designed to show that appellant had no connection with the alleged offense; and, the inference was clear: both were mistaken in their sworn testimony. Furthermore, appellant having subjected himself to cross-examination, it developed that he had been an inmate of the penitentiary upon several occasions for long periods of time.

Against this background, appellant's counsel argued with vigor that the State was trying to convict appellant because of his prior criminal record and not upon the merits of the charge then upon trial. The attack upon the undercover agent, and his alleged delay in coming forward with charges against appellant, as well as certain alleged discrepancies in his testimony, were criticized severely. The tactics of State's counsel were also mentioned in an unfavorable context.

Undercover agent Harden had testified that there were many unidentified persons around the Yates apartment at the time appellant sold him the tablets. The assistant district attorney, in reply, commented upon the amenability of such persons to compulsory process as witnesses, the failure of appellant to call any of such persons as witnesses (although he brought many other persons who testified in his behalf), and continued with the argument that agent Harden had no axe to grind in the conviction of appellant.

Then came the remarks complained of in the fifth "question":

"What do you think would happen to one of these undercover officers if their cover was discovered by these dope pushers and these dope dealers when they're out there in one of these apartments?

"MR. KOONS: Objection. Outside the record.

"THE COURT: Stay in the record.

"MR. KOONS: Ask the jury be instructed.

"THE COURT: Disregard the last statement, please. Do not consider it for any purpose.

"MR. KOONS: Move for a mistrial.

"THE COURT: Overruled."

The argument forming the basis of the third "question" came a few minutes later when the assistant district attorney made reference to appellant's argument as to opinions expressed by some of his own witnesses to the effect that appellant was not a law violator, etc. State's counsel disclaimed his intention to make a reply to such argument and continued:

"I wouldn't be up here right now if I didn't think this man was guilty because we are—

"MR. KOONS: Objection, expressing a personal opinion of guilt.

"THE COURT: Sustained.

"MR. KOONS: Ask the jury be instructed.

"THE COURT: Disregard the last statement, please. Do not consider it for any purpose.

"MR. KOONS: Move for a mistrial, Your Honor.

"THE COURT: Overruled.

"MR. HILL: Ladies and gentlemen, we are charged, the District Attorney's office—the prosecution is charged by statute not to gain a conviction, but to see that justice is done, and I'm glad I'm a member of the District Attorney's office when we're trying to see that justice is done and part of justice is to follow the law and see that drug pushers are eradicated from our society . . . ."

As we enter into our discussion of the prosecutor's argument, we pause to note the increasing frequency with which this court is confronted with complaints of arguments of prosecutors which violate the acceptable parameters governing such proceedings. In some instances, we have noted the impropriety sua sponte. E. g., Baldwin v. State, 499 S.W.2d 7, 9 (Tex.Cr.App.1973). In others, the questions presented have taken an inordinate amount of the time of the members of this court, in some instances requiring multiple opinions. E. g., Fowler v. State, 500 S.W.2d 643 (Tex.Cr.App.1973).

Brinkmanship in the field of jury argument is not to be commended and the careful advocate will better serve his profession—and his client—by following the acceptable standards governing counsel in his courtroom appearances. In a different context, Judge Onion observed, "A rebuke by the trial court in the presence of the jury may do more to end the practice of intemperate and improper argument than repeated admonitions or even reversals by

this court." Bray v. State, 478 S.W.2d 89, 90 (Tex.Cr.App.1972). In Stearn v. State, 487 S.W.2d 734, 736 (Tex.Cr.App.1972), noting the "growing tendency by the prosecutors to go outside the record in jury argument and then, on appeal, submit that such was not error; or, at most, harmless error", Judge Odom was moved to reexamine the purpose and object of an argument to the jury. Prosecutors would be well advised to bear in mind the admonitions and teachings of *Stearn*.

At the risk of being repetitious, we repeat the test followed by this court in determining whether an argument presents reversible error. Judge Roberts, speaking for a unanimous court in Thompson v. State, 480 S.W.2d 624, 630 (Tex.Cr.App. 1972), laid down the following rules:

"The test as to whether an improper argument constitutes reversible error is whether, (1) the argument is manifestly improper, harmful and prejudicial, or (2) it is violative of a statute or, (3) it injects a new and harmful fact into the case."

These admittedly general rules are subject to certain well-recognized interpretations. One is articulated in Ramos v. State, 419 S.W.2d 359, 368 (Tex.Cr.App. 1967):

"If the prosecutor's remark can be interpreted as an expression of his personal opinion of the guilt of the appellant, then such argument would be improper. Where, however, an instruction to disregard is not refused, such conduct will not cause a reversal. 1 Branch's Anno. P.C.2d, Sec. 385, p. 406."

Another guide to our consideration of such questions is to be found in Hodge v. State, 488 S.W.2d 779, 781–782 (Tex.Cr. App.1972), where the court said: "The question as to whether either of the statements of counsel necessitates a reversal of the judgment is to be resolved on the basis of the probable effect on the minds of the jurors and the facts of each case must be looked to."

 Even if we concede the prosecutor's statement of his personal opinion of guilt to be improper, the prompt action of the trial court, followed by an instruction to disregard such remarks, removed the harmful effect thereof. No reversible error is shown by such complaint. Ramos v. State, supra.

 Nor do we find error in counsel's speculation as to the fate of the undercover man if his identity had become known while he was in the midst of a group of drug users. Appellant's own testimony had established that there was a large group of persons present; that he possessed and used Ritlin (for personal medication according to his testimony) while in the apartment; that others were using marihuana, partaking of intoxicating liquor, etc. Appellant's fervid criticism of Harden for failure to make his identity known to appellant at such time and place authorized State's counsel to reply. No reversible error is shown. Hodge v. State, supra.

We adopt this language from Blackstock v. State, 433 S.W.2d 699, 700 (Tex.Cr. App.1968), in disposing of both complaints of the argument:

"In light of the record before us and the prompt action of the trial court in sustaining the objection and instructing the jury not to consider the argument for any purpose, the overruling of the motion for mistrial was not reversible error."

 In his fourth "question", appellant presents as error the refusal of the trial court to permit his counsel to elicit from his employer his opinion of appellant's guilt of the offense. for which he was then on trial. Understandably, no authorities are cited in support of this bizarre contention. It is uncontradicted that the employer was not present at the time and place of the commission of the alleged offense and had no independent personal knowledge of the details thereof.

It was the duty of the jury then present to determine the question of guilt or innocence of appellant. Opinion evidence of the witness was inadmissible. In Farmer v. State, 158 Tex.Cr.R. 397, 255 S.W.2d 864, 868 (1952), the court said: "When the jurors are as well qualified to speak as the witness, the opinion of the witness on the very issue to be determined by the jury is not permitted. See Maroney v. State, 115 Tex.Cr.R. 298, 29 S.W.2d 772, and cases cited." See, also, Hopkins v. State, 480 S. W.2d 212 (Tex.Cr.App.).

Finding no reversible error, the judgment of the trial court is affirmed.

Opinion approved by the Court.